TRIPLE-X CHEMICAL LABORATORIES, Plaintiff-Appellee, *v.* GREAT AMERICAN INSURANCE COMPANY, Defendant-Appellant.

First District (3rd Division)    No. 76-774

Opinion filed November 9, 1977.

Conklin, Leahy & Eisenberg, of Chicago (Daniel J. Leahy and Franklin A. Nachman, of counsel), for appellant.

C. Harker Rhodes, Jr., Kenneth H. Hoch, and Barry H. Braitman, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Great American Insurance Company, appeals from an order of the circuit court of Cook County granting plaintiff, Triple-X Chemical Laboratories, summary judgment on the issue of liability. Since the parties have stipulated as to the correct amount of damages to be awarded if the order is affirmed, only the correctness of the grant of summary judgment is at issue.

Plaintiff brought this action against eight fire insurers, seeking the benefits provided under its eight fire insurance policies, each issued by different companies, covering the contents and improvements on its plant located in the Village of Mundelein, Illinois. The losses resulted from two

fires which occurred on August 18, 1972, and September 7, 1972. Subsequent to the filing of this action, seven of the eight insurers settled plaintiff's claim and were dismissed from the suit. Defendant settled plaintiff's claim as to the fire of August 18, but filed affirmative defenses as to plaintiff's claim arising out of the second fire. In its affirmative defenses, defendant asserted that plaintiff "increased the hazard" and "neglected" to use all reasonable means to save and preserve the property at and after the loss, contrary to the policy provisions. After considering the pleadings, affidavits and depositions, the trial court held that there were no genuine issues of material fact regarding the defenses based on "neglect" and "increase of hazard" clauses contained in the policy. The court therefore ruled that plaintiff was entitled to judgment as a matter of law.

Plaintiff is a corporation engaged in the mixing, manufacturing and packaging of chemicals, both flammable and nonflammable. In November 1970, defendant issued plaintiff the policy in question. At the time the policy was issued, plaintiff used both explosion-proof and non-explosion-proof machines in its operations. An explosion-proof machine is one which has a motor totally encased, thus preventing sparks from escaping. Such machines generally are used in connection with the manufacture or packaging of flammable materials. At the time the policy was executed plaintiff made no representation, nor did any employee or agent of defendant inquire regarding plaintiff's use of non-explosion-proof machines to mix, manufacture, or package flammables.

On August 18, 1972, plaintiff's premises were damaged by fire. On August 25, plaintiff received a report from the office of the State Fire Marshal alleging certain fire code violations. Included was a notation that all motors on the plaintiff's premises should be of the explosion-proof type. Compliance was ordered within 30 days. Plaintiff was able to comply immediately with several items, but as of September 7 the replacement of all non-explosion-proof motors had not been completed. On September 7, 1972, plaintiff's premises again were damaged by fire.

In addition to what we have noted, defendant's affirmative defenses asserted that plaintiff had increased the hazard insured against by using non-explosion-proof motors after receipt of the fire marshal's report. It also stated that the September 7 fire was caused by plaintiff's use of a non-explosion-proof machine to fill stove polish, a flammable substance. Support for this allegation was found in the affidavit of William McNamara, one of plaintiff's employees.

Martin R. Rosenthal, plaintiff's president, stated in a supplemental affidavit that before, at, and after execution of the insurance policy, non-explosion-proof machines were used to manufacture and package certain flammable materials. The affidavit further recited that at no time prior to September 7 had any representative, agent, or employee of plaintiff

received any warning or notice of policy cancellation from defendant referring to the use of non-explosion-proof machines.

■■  Defendant argued in the trial court that there was a genuine issue of material fact as to whether plaintiff had neglected to use all reasonable means to save and preserve the property at and after the loss. In this court, defendant has waived any argument as to the correctness of the trial court's ruling on its affirmative defense based upon the "neglect" clause of the policy. Defendant has failed to argue the point in its brief. Under Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7)), points not argued in appellant's brief are deemed waived. See *Riley v. Unknown Owners* (1975), 25 Ill. App. 3d 895, 324 N.E.2d 78.

Defendant, however, contends that there was a genuine issue of material fact concerning the increase of hazard on the part of plaintiff. Defendant maintains that plaintiff's conduct subsequent to the receipt of the fire marshal's report on August 25 constituted evidence of that increase in hazard which could absolve defendant from liability under the policy. Defendant points to that portion of the report which required that all electrical apparatus on plaintiff's premises be equipped with explosion-proof motors. Compliance was ordered within 30 days. However, plaintiff continued to use both types of machines, and the September 7 fire was the result of a spark from a non-explosion-proof motor igniting a flammable substance. Defendant concludes that plaintiff's continued use of such machines substantially increased the risk of fire.

■■■  Accepting defendant's allegations as true and correct, they do not substantiate defendant's defense of increase of hazard. In the absence of fraud or deceit, which are not alleged here, an insurer is deemed to insure against the risks inherent in the business of the insured at the time the policy is issued. (See *Simmons v. Home Insurance Co.* (1925), 235 Ill. App. 344.) In determining the nature and extent of the risks insured against, the insurer is bound by what it knows or should have known concerning the normal and customary hazards inherent in the insured's business. (*Supreme Lodge Knights of Pythias v. Kalinski* (1896), 163 U.S. 289, 41 L. Ed. 163; *Norwich Union Indemnity Co. v. Haas* (7th Cir. 1950), 179 F.2d 827.) If the insurer does not intend to insure against a risk which is necessarily incident to the business of the insured, it should specifically exclude such risk from the coverage of the policy. *Bremen State Bank v. Hartford Accident & Indemnity Co.* (7th Cir. 1970), 427 F.2d 425.

■■  The record discloses that at the time defendant issued its policy approximately 20 percent of plaintiff's business consisted of mixing, manufacturing and packaging of flammable substances. At the inception of the policy both explosion-proof and non-explosion-proof machines were located on plaintiff's premises. Even a routine inspection of those premises would have revealed that flammable substances were stored in

close proximity to non-explosion-proof machines. This would place defendant on inquiry as to whether such machines were used in connection with flammable substances. Since an increase in hazard clause is for the benefit of the insurer, a company which knows or ought to know of facts which would entitle it to take advantage of the clause should not be permitted thereafter to retain the insured's premium and treat the policy as if in full force until a loss occurs and then for the first time seek to secure a forfeiture. (*Orient Insurance Co. v. McKnight* (1902), 197 Ill. 190, 64 N.E. 339.) Defendant here has suggested that it assumed plaintiff would not use non-explosion-proof machines in connection with flammables. It is elementary that an insured will not be bound by unexpressed and unwritten assumptions of the insurer. If such were the case, any policy could be avoided at an insurer's whim.

Defendant further contends that Rosenthal's deposition testimony reveals a genuine issue of material fact regarding plaintiff's practice of using non-explosion-proof machines in connection with flammables. In particular, defendant relies upon the following colloquy between Rosenthal and defense counsel at that deposition:

"Q. How many machines did you—filling machines do you have that could fill the stove polish?

A. Oh, golly, probably six or seven.

Q. And what kind of motors did you have on those units?

A. Explosion-proof—not all of them. The ones that we used were explosion-proof though."

Defendant maintains that this testimony reveals a business practice which contradicts the assertions in Rosenthal's supplemental affidavit relating to the use of non-explosion-proof machines to fill flammable substances. This contention ignores the fact that defense counsel's initial question was directed to the time period following the receipt of the fire marshal's report. This testimony had no bearing on prior practices of plaintiff.

Defendant also directs our attention to Rosenthal's following deposition testimony:

"Q. Now, did you give any directives to any of your employees of what filling machines to use, and which ones not to use after you received [the fire marshal's report]?

A. Yes. And more important, as we scheduled the jobs, the jobs sort of had their machines, and the jobs which were scheduled employed when there was any kind of fire hazard, or flammable material, were directed towards the safe machines.

Q. And this occurred after when you received this letter?

A.· Actually it had occurred before that, but I think it was restressed in that period."

Again, defense counsel's preliminary question was directed to the time

period after receipt of the report. Taken in context, the statement, "[a]ctually it had occurred before that," refers to the interval between the fire marshal's physical inspection of the premises on August 18 and the issuance of the report on August 25 because Rosenthal had just testified that several of the items contained in the report had been corrected by the time of its receipt. Rosenthal's deposition testimony was not in conflict with the facts set forth in his supplemental affidavit and was insufficient to create a material question of fact.

■■ The conclusion is unavoidable that there is no factual dispute as to the nature of plaintiff's operations at the time the policy was issued and that these operations involved non-explosion-proof machines and flammable substances. Neither affidavits, counteraffidavits, nor deposition testimony support defendant's claim that there was a change of usage or an increase of hazard from the time the policy was issued.

■■ Defendant relies upon the fire marshal's report and plaintiff's subsequent use of non-explosion-proof machines as amounting to an increase in hazard. Such use was merely a continuation of prior practice. The receipt of the report by plaintiff in no way altered the nature or extent of the insured risk. At most, the continued use of such machines amounted to negligence. Negligence on the part of the insured will not defeat the insurer's liability since one of the purposes of liability insurance is to guard against one's negligence. *Cerny-Pickas & Co. v. C.R. Jahn Co.* (1955), 7 Ill. 2d 393, 131 N.E.2d 100.

For the reasons stated, the order of the circuit court of Cook County awarding summary judgment to the plaintiff on the issue of liability is affirmed.

Order affirmed.

JIGANTI and McGILLICUDDY, JJ., concur.