DASH MESSENGER SERVICE, INC., Plaintiff-Appellant, v. HARTFORD INSURANCE COMPANY OF ILLINOIS, Defendant-Appellee (Donald Schwartz *et al.*, Defendants-Appellants; J.M.B. Insurance Agency *et al.*, Defendants).

First District (1st Division) Nos. 1—89—3084, 1—89—3085 cons.

Opinion filed November 4, 1991.

Hofeld & Schaffner, of Chicago (James N. Karahalios, of counsel), for appellants.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Patti M. Deuel, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Dash Messenger Service, Inc. (Dash), brought a declaratory judgment action against defendants Hartford Insurance Co. (Hartford), J.M.B. Insurance Co. and Daniel Berman to determine whether these defendants owed a defense and "Premises & Related Operations" coverage under a "special Multi-flex" insurance policy issued by Hartford.[1] On cross-motions for summary judgment, the trial court ruled that the Hartford policy did not cover the underlying occurrence and that Hartford had no duty to defend Dash against the underlying lawsuit. Defendants Donald and Monica Schwartz (the plaintiffs in the underlying suit) and Dash now appeal. For the following reasons, we reverse and remand the proceedings to the circuit court.

The underlying complaint brought by Donald and Monica Schwartz against Dash and Dash employee Gilbert Aaron alleges that on February 17, 1987, Donald Schwartz, a physician, was crossing the intersection of Randolph and Wabash in Chicago. Aaron allegedly rode a bicycle down the street the wrong way, entered the crosswalk against the traffic light and struck Dr. Schwartz. The record indicates that Dr. Schwartz has permanent brain damage and, as of August 25, 1989, had incurred approximately $310,000 in medical costs, which were continuing to accrue at the rate of $5,000 per month.

Count I of the Schwartzes' complaint alleges liability based on the negligent and unlawful operation of the bicycle. Count II alleges loss

---

[1]J.M.B Insurance Co. and Daniel Berman are not parties to this appeal, and the claims regarding them are not before this court.

of consortium on the same theory as count I. Count III alleges that Dash negligently failed to adequately screen, train and supervise its employees; failed to warn the public of these other failures; and scheduled so many deliveries to its employees in the course of a day that the employees rushed to complete their assignments in disregard of the safety of the public, including Dr. Schwartz.

Hartford filed an appearance on Dash's behalf, pursuant to the "special Multi-flex" policy it had previously issued to Dash. The terms of this policy will be discussed as necessary later in this opinion. Later, Hartford denied coverage on the ground that the accident did not occur on Dash's premises and obtained a court order allowing it to withdraw from the case. Dash retained new counsel and filed the complaint for declaratory judgment which is the subject of this appeal, alleging that the accident was covered by the Hartford policy and that Hartford had a duty to defend Dash in the personal injury suit. The Schwartzes were later joined as defendants in the declaratory judgment action.

Following a hearing on the parties' cross-motions for summary judgment, the trial court ruled in favor of Hartford. The trial court held that there was no coverage under the Hartford policy and that Hartford therefore had no duty to defend Dash. The trial court also struck two paragraphs from an affidavit of Calvin Palmer, Dash's president, on the ground that Palmer's expectation of coverage was hearsay and conclusory, in violation of Illinois Supreme Court Rule 191 (134 Ill. 2d R. 191). Dash and the Schwartzes now appeal.

The Schwartzes and Dash first argue that the order granting summary judgment to Hartford is based upon a misinterpretation of both the policy and Illinois insurance law. Summary judgment is proper when the pleadings, depositions and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) In order to survive a motion for summary judgment, the nonmoving party must come forward with evidentiary material that establishes a genuine issue of fact. (*Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55, 545 N.E.2d 184.) Nevertheless, because summary judgment is a drastic method of terminating litigation, the movant's entitlement must be free from doubt; the court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233-34, 564 N.E.2d 778, 780.

■ When interpreting an insurance policy, the parties' intent is the most significant factor. (*Weeks v. Aetna Insurance Co.* (1986), 150 Ill. App. 3d 90, 94-95, 501 N.E.2d 349, 352.) Intent may be ascertained from the circumstances surrounding the issuance of the policy, including the situation of the parties and the purpose for which the policy was obtained. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 378, 400 N.E.2d 921, 922.) All the provisions of the insurance contract, rather than an isolated part, should be read in light of each other to determine whether an ambiguity exists. See *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 290 N.E.2d 873.

■ Because the interpretation of insurance contracts is governed by the rules for interpreting contracts generally (*e.g., Consolidated Rail Corp. v. Liberty Mutual Insurance Co.* (1981), 92 Ill. App. 3d 1066, 416 N.E.2d 758), whether a policy is ambiguous is a question of law for the court to decide (see *Kukla Press, Inc. v. Family Media, Inc.* (1985), 133 Ill. App. 3d 939, 943, 479 N.E.2d 1116, 1119), but if the court decides it is ambiguous, the construction of the contract becomes a question of fact. (See *Quake Construction, Inc. v. American Airlines, Inc.* (1989), 181 Ill. App. 3d 908, 913, 537 N.E.2d 863, 866, *aff'd* (1990), 141 Ill. 2d 281, 565 N.E.2d 990.) A court should consider the plain meaning of the policy language and should not search for a nonexistent ambiguity. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 5, 429 N.E.2d 1203, 1205.) Nevertheless, even in doubtful cases, courts should be quick to construe the policy in favor of coverage so that the insured is not deprived of a benefit for which the insured paid. (*Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, 755, 488 N.E.2d 1338, 1340.) In turn, when a complaint sets forth allegations potentially within the policy coverage, the insurer must defend the action. *E.g., Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335, 339.

In this case, the record indicates that the trial court considered itself bound by *Schnackenberg*, in which an insurance company sought a declaratory judgment against its insureds, Barbara Schnackenberg and her son Mark, and the plaintiff in the underlying suit, Maria Strehlow. The underlying complaint alleged that Strehlow was injured by a bicycle ridden by Mark Schnackenberg as she was crossing the street at an intersection approximately 2½ blocks from the Schnackenberg home. The homeowner's policy covering the two-family dwelling stated:

" 'The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto ***.'

***

'***

"insured premises" means the premises described below (2444 N. Orchard, Chicago, Illinois) or designated in the policy as subject to this endorsement, including the ways immediately adjoining ***.' " *Schnackenberg*, 88 Ill. 2d at 3-4, 429 N.E.2d at 1204.

The supreme court held that there was no coverage, due to the unambiguous meaning of "the ways immediately adjoining" the "insured premises" in the policy. (*Schnackenberg*, 88 Ill. 2d at 8, 429 N.E.2d at 1206-07.) The court then stated that bicycle riding was only incidental to the use of the premises until the bicycle left the premises; otherwise, there would be no geographic limit to the coverage. The insurer did not need to use other limiting policy language because the Schnackenbergs' interpretation could not reasonably have been contemplated by the parties when they entered into the contract of insurance. *Schnackenberg*, 88 Ill. 2d at 8, 429 N.E.2d at 1207.

In this case, the "Premises and Related Operations in Progress" portion of the Hartford policy contained a coverage provision virtually identical to the policy language in *Schnackenberg*, except for the location of the "insured premises." The record indicates that the accident in this case did not occur on Dash's insured premises, which are on the second floor of an office building on Roosevelt Road. The record also shows that the two-room office suite is used to take orders and dispatch the messengers, who pick up and deliver packages out on location.

Hartford relies primarily on the decisions of our supreme court in *Schnackenberg* and *Cobbins*. It does not follow as a matter of law, however, that there is no coverage simply because the Hartford coverage provision is virtually identical to the clause in *Schnackenberg* and similar to that in *Cobbins*. Both *Schnackenberg* and *Cobbins* state that we may not focus exclusively on one provision in a policy when reading a policy in its entirety renders the policy ambiguous. (*Schnackenberg*, 88 Ill. 2d at 5, 429 N.E.2d at 1205.) Applying the rules of policy

construction discussed above, we conclude that the record in this case precludes the entry of summary judgment.

The circumstances surrounding the issuance of the policy, the situation of the parties and the purpose of the policy in *Schnackenberg* are far removed from those presented in this appeal. *Schnackenberg* involved a homeowner's policy issued to a family; this appeal involves "Premises & Related Operations in Progress" coverage issued to a corporation operating a messenger service. The risks which are "reasonably contemplated by the parties" (as the *Schnackenberg* court put it) upon entering into a policy in the latter situation may not be the same as in the former situation. See also *Safeco Insurance Co. v. Brimie* (1987), 163 Ill. App. 3d 200, 516 N.E.2d 577 (denying coverage due to exclusion in homeowner's policy).

*Schnackenberg* was concerned primarily with the definition of "the ways immediately adjoining" as part of the definition of "insured premises" (*Schnackenberg*, 88 Ill. 2d at 5-8, 429 N.E.2d at 1205-06) and secondarily with defining bicycle riding as incidental to use of the premises only while the bicycle remained there (*Schnackenberg*, 88 Ill. 2d at 8, 429 N.E.2d at 1207). Other portions of the coverage provision in *Schnackenberg* were not addressed by our supreme court, apparently because they had not been raised there.

■ For example, both the *Schnackenberg* and Hartford policies provide coverage for incidents caused by an occurrence and "arising out of" the ownership, maintenance, and use of the insured premises. This court has repeatedly held that the phrase " 'arising out of' is both broad and vague, and must be liberally construed in favor of the insured." (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091, 1094.) "But for" causation satisfies this language. *Consolidated Rail Corp.*, 92 Ill. App. 3d at 1069, 416 N.E.2d at 761. But see *Heritage Insurance Co. v. Bucaro* (1981), 101 Ill. App. 3d 919, 923, 428 N.E.2d 979, 982.

The vagueness of this phrase has resulted in the extension of coverage to railroad employees injured away from premises leased by a subsidiary of a railroad company (*Consolidated Rail Corp.*, 92 Ill. App. 3d at 1069, 416 N.E.2d at 762); an injured employee of an insured who was assaulted in a stairwell away from leased newsstand premises within a railway terminal (*Maryland Casualty Co.*, 126 Ill. App. 3d at 154-55, 466 N.E.2d at 1095); a minor for injuries received in an automobile owned by a day care center off its premises (*United States Fidelity & Guaranty Co. v. State Farm Mutual Automobile Insurance Co.* (1982), 107 Ill. App. 3d 190, 437 N.E.2d 663); and the

estate of a passenger attempting to board a commuter train from an area excluded from the leased railroad premises (*Burlington Northern R.R. Co. v. Illinois Emcasco Insurance Co.* (1987), 158 Ill. App. 3d 783, 787-89, 511 N.E.2d 776, 778-79). Given these cases, which both predate and antedate *Schnackenberg,* we cannot say as a matter of law that there is no coverage of the occurrence at issue in the underlying complaint.

Hartford responds that the *U S F & G* and *Burlington Northern* policies covered occurrences arising out of the insured's business as well as those arising out of the use of the leased premises. (*United States Fidelity & Guaranty Co.*, 107 Ill. App. 3d at 191, 437 N.E.2d at 664-65; *Burlington Northern R.R. Co.*, 158 Ill. App. 3d at 787, 511 N.E.2d at 778.) Hartford also notes that one appellate decision refused to read a policy covering the former as covering the latter. (*Bucaro*, 101 Ill. App. 3d at 923, 428 N.E.2d at 982.) However, the *Maryland Casualty Co.* and *Consolidated Rail Corp.* courts affirmed declarations of coverage where the policy referred only to premises. See *Maryland Casualty Co.*, 126 Ill. App. 3d at 153, 466 N.E.2d at 1093; *Consolidated Rail Corp.*, 92 Ill. App. 3d at 1068, 416 N.E.2d at 761.

In *Cobbins*, the other supreme court decision upon which Hartford relies, the issue was whether a negligent sale of fireworks which later injured a person off premises fell within premises liability coverage purchased by the merchant or within unpurchased completed operations coverage. (See *Cobbins*, 53 Ill. 2d at 289, 290 N.E.2d at 876.) The supreme court held that the sale was a completed operation expressly excluded from the insured's policy. (*Cobbins*, 53 Ill. 2d at 291, 290 N.E.2d at 877.) The Hartford policy has a similar exclusion, and Dash did not purchase completed operations coverage, but the record does not establish whether the occurrence was part of a completed or uncompleted operation. Thus, *Cobbins* does not control this appeal.

■ In addition, the determination of whether an off-premises occurrence falls within the coverage of a "Premises & Related Operations" policy requires that the coverage definitions and specific exclusions be read together. (*Cobbins*, 53 Ill. 2d at 290, 290 N.E.2d at 876-77.) The record on appeal indicates that the "Persons Insured" section of the Hartford policy first applied to officers of Dash, but was broadened by an endorsement including as an insured "any employee of the named insured while acting within the scope of his duties as such" (emphasis omitted). The *Maryland Casualty Co.* and *Consolidated Rail Corp.* courts, relying on the "Persons Insured" by a policy, as well as the "arising out of" language within those provi-

sions, held that there was policy coverage. See *Maryland Casualty Co.*, 126 Ill. App. 3d at 153, 466 N.E.2d at 1093; *Consolidated Rail Corp.*, 92 Ill. App. 3d at 1068, 416 N.E.2d at 761.

Hartford concedes in its brief that Dash's employees are insureds, but contends that the event also must fall within the scope of the policy coverage. (See *Manchester Insurance & Indemnity Co. v. Universal Underwriters Insurance Co.* (1972), 5 Ill. App. 3d 847, 852, 285 N.E.2d 185, 187.) The essence of Hartford's position in this case is that under the policy it issued, Dash employees would only be insured while acting within the scope of their duties while in the office suite or the ways immediately adjoining it. However, the record shows that Hartford knew or should have known from its own policy declarations that it was insuring a messenger service. The ordinary definition of a messenger includes a "person employed to carry telegrams, letters, or parcels." (American Heritage Dictionary 789 (2d College ed. 1982).) The ordinary definition of "carry" is "[t]o bear or convey from one place to another; transport." (American Heritage Dictionary 243 (2d College ed. 1982).) Thus, the very definition of a messenger implies that Dash was paying to add persons who spend most, perhaps all, of their time off premises in performing their duties. See also, *e.g., Finish Line Express, Inc. v. City of Chicago* (1978), 72 Ill. 2d 131, 379 N.E.2d 290 (employees of "messenger service" ran bets to racing track and did not remain at the office).

In Illinois, as in many other jurisdictions, if an insurer does not intend to insure against a risk likely to be inherent in the insured's business, the insurer should expressly exclude that risk from the coverage of the policy. (See, *e.g., Canadian Radium & Uranium Corp. v. Indemnity Insurance Co. of North America* (1952), 411 Ill. 325, 334-35, 104 N.E.2d 250, 255; *Triple-X Chemical Laboratories v. Great American Insurance Co.* (1977), 54 Ill. App. 3d 676, 679, 370 N.E.2d 70, 72; *Bremen State Bank v. Hartford Accident & Indemnity Co.* (7th Cir. 1970), 427 F.2d 425, 427 (applying Illinois law).) An off-premises bicycle accident is a normal and customary risk likely to be inherent in a messenger business. The name of the applicant and the description of the business in the application should have put Hartford on notice of this risk. Moreover, as in *Triple-X*, the slightest inquiry would have put the insurer on notice that the business was conducted almost exclusively off the premises. (*Triple-X*, 54 Ill. App. 3d at 679-80, 370 N.E.2d at 72-73.) Hartford has failed to point to anything in the record indicating that it notified Dash, J.M.B. or Daniel Berman prior to the occurrence that this risk was not covered by their policy, let alone that it excluded this risk in the policy itself.

■ The Hartford policy not only fails to expressly exclude this inherent risk, but also contains exclusions which could lead a reasonable purchaser to conclude that the risk was covered. Such exclusions "are an integral part of the policy which must be considered in determining the scope of coverage." (See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 494, 475 N.E.2d 872, 876.) We therefore note a few of the Hartford policy exclusions which are germane to this dispute. Exclusion (q) states that the policy does not apply:

"to bodily injury *** arising out of operations on *or from* premises (other than the insured premises) owned by, rented to or controlled by the named insured, or to liability assumed by the insured under any contract or agreement relating to such premises." (Emphasis changed.)

A reasonable purchaser might infer from exclusion (q) that the phrase "arising out of the *** use of the insured premises and all operations necessary or incidental thereto" applies to operations *from* the insured premises. It is undisputed in this case that Dash dispatches its employees *from* the insured premises. Thus, whether the policy language may induce a reasonable purchaser to believe that the occurrence at issue would be covered is a material issue of fact.

The record also shows that exclusions (b), (c) and (e) exclude coverage of bodily injury in many vehicle-related contexts. Exclusion (e) excludes watercraft-related occurrences except those arising when the craft is on shore of the premises. A reasonable person might infer from exclusion (e) that the off-premises operation of watercraft incidental to the use of the insured premises was covered, or else it would not be necessary to exclude such operations with an exception where watercraft are ashore on the insured premises. Exclusion (b) similarly excludes automobile-related occurrences except those occurring on the premises. Exclusion (c) excludes occurrences involving "mobile equipment" (including bicycles) in contexts such as racing or demolition contests. A reasonable person might infer from the existence of these exclusions that other bicycle-related occurrences fall within the policy coverage. An amendment to part (2) of exclusion (c), excluding coverage of bodily injury caused by the operation of a snowmobile by any person in the course of Dash's employment, may suggest that the parties thought that such off-premises occurrences were covered after the employees were added as "persons insured." We cannot conclude as a matter of law that a reasonable person would seek (or that an insurance company would extend) coverage for a snowmobiling accident only within the confines of a two-room suite on

the second floor of an office building and the ways immediately adjoining it.

The policy further states that it "applies only to bodily injury which occurs within the policy territory," which is defined, in relevant part as:

"1. The United States of America, its territories or possessions, or Canada;

2. international waters or air space, provided [it] does not occur in the course of travel or transportation to or from any other country, state or nation ***."

A reasonable purchaser might infer from these terms that if the policy coverage were limited solely to occurrences on the insured premises, these terms would be superfluous. These terms also suggest that the fear of unlimited geographic liability enunciated in *Schnackenberg* is not present here, as the policy expressly limits the geographic boundaries of coverage.

In sum, construing the Hartford policy as a whole, we conclude that the ambiguity of the policy under the facts and circumstances of this case raises a material issue of fact concerning the parties' intent and precludes the entry of summary judgment.

The Schwartzes and Dash also argue that the trial court erred in striking two paragraphs from the affidavit of Calvin Palmer, Dash's president. Illinois Supreme Court Rule 191 (134 Ill. 2d R. 191) permits a court to strike portions of an affidavit containing mere conclusions of law or fact, as well as statements that would be inadmissible or to which the affiant could not competently testify in court. (See, *e.g.*, *Murphy v. Urso* (1981), 88 Ill. 2d 444, 462-63, 430 N.E.2d 1079, 1088.) However, given that the reversal of summary judgment in this case does not depend on matters which appear solely in the paragraphs at issue, it is unnecessary to determine whether the trial court's rulings in this regard were in error.

For all of the aforementioned reasons, we reverse the entry of summary judgment and remand the cause for proceedings consistent with this opinion.

Reversed and remanded.

MANNING, P.J., and O'CONNOR, J., concur.