THIRD DIVISION
April 20, 2011

No. 1-10-1085

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 08 CH 41914 |
| | ) | |
| RECURRENT TRAINING CENTER, INC., | ) | |
| | ) | Honorable Kathleen M. Pantle, |
| Defendant-Appellant | ) | Judge Presiding |
| | ) | |
| (Jennifer Garland, Rande Repke, Morgan Stanley | ) | |
| and Company, Inc., HK Golden Eagle, Inc., | ) | |
| Defendants). | ) | |

Justice Murphy delivered the judgment of the court, with opinion.
Presiding Justice Quinn and Justice Neville concurred in the judgment and opinion.

**OPINION**

Plaintiff, Pekin Insurance Company, filed a complaint for declaratory judgment seeking a

determination of whether it owed defendant Recurrent Training Center a duty to defend it in

underlying litigation. The trial court found that plaintiff did not have a duty to defend Recurrent

Training Center in the underlying actions. For the following reasons, we affirm.

I. BACKGROUND

In January 2006, Recurrent Training Center, which is located in Savoy, Illinois, trained

Mark Turek on the operation of a Cessna 421 B airplane. On January 30, 2006, Turek was

piloting a Cessna for business purposes on behalf of his employer, Morgan Stanley & Co., Inc.

The plane crashed near Palwaukee Airport in Wheeling, Illinois, 170 miles from Savoy, Illinois, resulting in the deaths of Turek and three others.

Defendants Jennifer Garland, Lisa Waugh, Northern Trust Bank, Rande Repke, and Donna Turek[1] filed actions against Recurrent Training Center in the circuit court of Cook County seeking damages for personal injuries and wrongful death arising out of the plane crash. They alleged that Recurrent Training Center negligently trained Mark Turek, who was negligent in the operation of the airplane. Defendants Morgan Stanley and HK Golden Eagle, Inc., sought contribution from Recurrent Training Center in connection with the underlying plaintiffs' claims against Morgan Stanley and HK Golden Eagle.

Plaintiff issued a commercial general liability policy to Recurrent Training Center for the period of March 1, 2005, through March 1, 2006. Section I.A. of the policy provides:

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate an 'occurrence' and settle any claim or 'suit' that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

---

[1] Defendants Lisa Waugh, Northern Trust, and Donna Turek were voluntarily dismissed from the case.

1-10-1085

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlement under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS COVERAGES A AND B.

b. This insurance applies to 'bodily injury' or 'property damage' only if:

(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and

(2) The 'bodily injury' or 'property damage' occurs during the policy period."

The policy defines the "coverage territory" as "The United States of America."

The declarations page showed that included in the premium that Recurrent Training Center paid for "SCHOOL-NOC-FP" was coverage for "products and/or completed operations." "Products-completed operations hazard" "includes all 'bodily injury' and 'property damage' occurring away from the premises you own or rent and arising out of 'your product' or 'your work' except: (1) Products that are still in your physical possession or (2) Work that has not yet been completed or abandoned."

The policy contains a "Limitation of Coverage to Designated Premises or Project" endorsement, which provides:

"This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

**SCHEDULE**

Premises:

REFER TO LOCATION OF ALL PREMISES ON CG0005

Project:

(If no entry appears above, information required to complete this endorsement will

be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to 'bodily injury,' 'property damage,'

'personal injury,' 'advertising injury' and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the

Schedule and operations necessary or incidental to those premises; or

2. The project shown in the schedule."

The policy's declarations identify the location to which the coverage part applies as "RTE 45 S,

CHAMPAIGN WILLARD AIRPORT, SAVOY, IL," the location of Recurrent Training Center's

flight simulator and classroom instruction school.

Recurrent Training Center tendered its defense to plaintiff for the underlying claims, and

plaintiff accepted the tender subject to reservation of rights. Plaintiff then filed a complaint for

declaratory judgment seeking a declaration that it had no duty to defend Recurrent Training

Center in the underlying actions. Plaintiff contended that the policy applied only to injuries

arising out of the ownership, maintenance, or use of the premises shown in the schedule, and

Palwaukee Airport in Wheeling, Illinois, was not a location described in the policy.

1-10-1085

Plaintiff and Recurrent Training Center filed cross-motions for summary judgment. Recurrent Training Center argued that the injuries arose out of the ownership, maintenance, or use of its premises because the negligent acts alleged in the underlying complaints occurred on its premises. The trial court concluded that the coverage territory was limited by the endorsement and that the injuries did not arise from the ownership, maintenance, or use of the premises in Savoy, Illinois. Accordingly, the court found that plaintiff had no duty or obligation to defend Recurrent Training Center in the underlying actions. This appeal followed.

## II.  ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, and other evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2006). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle [him] to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt. *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). An appellate court's review of a grant of summary judgment is *de novo*. *Woods v. Pence*, 303 Ill. App. 3d 573, 576 (1999).

Our primary objective in construing the language of an insurance contract is to ascertain and give effect to the intent of the parties to the contract. *American Service Insurance Co. v. Pasalka*, 363 Ill. App. 3d 385, 389 (2006). Courts should construe an insurance policy as a

-5-

1-10-1085

whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

An insurer's duty to defend, which is broader than its duty to indemnify, is generally determined by comparing the allegations of the underlying complaint against the insured to the language of the insurance policy. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992); *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 970 (2003). In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions. *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500 (1998). If the facts alleged in the underlying complaint fall even potentially within the policy's coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false, or fraudulent. *James McHugh Construction Co.*, 344 Ill. App. 3d at 970. Because the insurer's duty to defend is broader than the duty to indemnify, it may be obligated to defend against causes of action and theories of recovery that are not in fact covered by the policy. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 162 (1988).

Recurrent Training Center first contends that the trial court erred in finding that the designated-premises endorsement limited the coverage territory because the completed-operations coverage provided distinct coverage. It argues that the trial court rendered meaningless its completed-operations coverage. See *Cincinnati Insurance Co. v. Gateway Construction Co.*, 372 Ill. App. 3d 148, 152 (2007).

A policy must be construed in conjunction with endorsements in order to determine the meaning and effect of the insurance contract. *Vole v. Atlanta International Insurance Co.*, 172 Ill. App. 3d 480, 483 (1988). If, however, the provisions of a policy and an attached endorsement conflict, the terms and conditions of the endorsement control and supersede the conflicting policy provisions. *Tribune Co. v. Allstate Insurance Co.*, 306 Ill. App. 3d 779, 784 (1999). Therefore, to the extent that the designated-premises endorsement and the completed-operations coverage conflict, the designated-premises endorsement controls. It applies only to "bodily injury" arising out of the "ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." Negligent training is not covered under the endorsement, nor are injuries that occurred off the premises. Furthermore, section I.2.g. of the policy excludes injuries arising out of the "ownership, maintenance, use or entrustment to others of any aircraft."

Recurrent Training Center also argues that the designated-premises endorsement modifies coverage only under the commercial-general-liability coverage part. It notes, for example, that the "Nuclear Energy Liability Exclusion Endorsement" specifies that it modifies, *inter alia*, the commercial-general-liability coverage part and the products/completed operations hazard coverage part. Because the designated-premises endorsement specifies only that it modifies the commercial-general-liability coverage part, Recurrent Training Center argues that the endorsement does not apply to completed-operations coverage. However, completed-operations coverage is under the spectrum of the broad commercial-general-liability; section V.14., which

defines "products-completed operations hazard," is included under the "Commercial General Liability Coverage Form."

We find *Heritage Insurance Co. v. Bucaro*, 101 Ill. App. 3d 919 (1981), to be instructive. In that case, two men stole a car from the defendant's automobile-salvage shop and collided with a motorcycle. The riders of the motorcycle sued the defendant for leaving the keys in the ignition of an unattended vehicle on his premises. The defendant tendered his defense to his insurer, arguing that the underlying complaint alleged an occurrence " 'arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto,' " as described in the policy, since the car was acquired for the purpose of salvage and dismantling. *Bucaro*, 101 Ill. App. 3d at 922. The insurer filed a declaratory judgment action arguing that the collision did not take place on the insured premises.

This court concluded that the defendant's conduct of leaving the keys in the car, while causally related to the collision, was not an occurrence covered by the policy, as the term "occurrence" "presumes a mishap and an accompanying injury on the premises." *Bucaro*, 101 Ill. App. 3d at 923. "No provision is made therein for occurrences away from the premises stemming from acts of negligence originating on the premises." *Bucaro*, 101 Ill. App. 3d at 923. Accordingly, the court concluded that the defendant's acts of alleged malfeasance, which contributed to an occurrence miles away from the premises, were not within the scope of the coverage provided in the policy. *Bucaro*, 101 Ill. App. 3d at 923. See also *Cobbins v. General Accident Fire & Life Assurance Corp.*, 53 Ill. 2d 285 (1972); *Lorenzo v. Capitol Indemnity Corp.*, 401 Ill. App. 3d 616 (2010).

Recurrent Training Center relies on *Hawkeye Security Insurance Co. v. Hodorowicz*, 84 Ill. App. 3d 948, 950 (1980), for its holding that "[O]nce a product has been completed and sent to market, or a service has been performed *** the premises-operations coverage is not an appropriate coverage and the individual now needs 'products liability' or 'completed operations' coverage, the coverages are complimentary and not overlapping and the premiums are separate and distinct. The premium charged for either coverage would be inadequate to cover both hazards." *(*Internal quotation marks omitted.) As the trial court noted, the dispute in *Hawkeye* was whether a policy exclusion for completed operations was ambiguous. *Hawkeye Security Insurance Co.*, 84 Ill. App. 3d at 950. The instant case does not involve an exclusion for completed operations.

Recurrent Training Center also argues that the trial court erred because it "failed to recognize the ambiguity created by the different uses of the phrase 'arising out of' in two different parts of the policy." Plaintiff responds that the trial court did not analyze any possible ambiguity because Recurrent Training Center did not raise such an argument in its cross-motion for summary judgment. See *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1053 (2005) (issues not raised in the trial court are deemed waived and cannot be argued for the first time on appeal). Recurrent Training Center did argue that the policy "used the very broad terms 'arising out of' the use of the insured premises." While Recurrent Training Center did not fully develop an argument based on ambiguity of the policy's terms, we find that it was adequately raised.

If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning. *Pasalka*, 363 Ill. App. 3d at 389. Conversely, if the language in the policy is

susceptible to more than one meaning, it is ambiguous and will be strictly construed against the insurer. *Pasalka*, 363 Ill. App. 3d at 389. "The question of whether a policy is ambiguous is a matter of law, in which the court makes the determination by examining the language at issue in light of the policy as a whole. Thus, the court must construe the policy in its entirety, giving effect to all parts of the policy as is possible, including endorsements." *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 602 (1992). Courts should not strain to find ambiguity in an insurance policy where none exists. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

Recurrent Training Center contends that the policy is ambiguous because the phrase "arising out of" was used differently in two parts of the policy: (1) the definition of completed-operations coverage and (2) the designated-premises exclusion. It argues that the policy is ambiguous because in its first use of the phrase, the policy granted coverage to suits for injuries occurring away from the insured's premises that "arise out of" the insured's work, while in its second use, the policy used the phrase to limit commercial-general-liability coverage to an injury "arising out of" the designated premises.

In *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1 (1981), the court found a similar clause to be unambiguous. In *Schnackenberg*, the plaintiff in the underlying action alleged that she was injured by a bicycle ridden by the insured when she was crossing the street at an intersection 2 ½ blocks from the insured's home. The insured's homeowner's policy read that the insurer would pay on behalf of the insured all sums that the insured becomes legally obligated to pay as damages because of " 'A. bodily injury or B. property damage to which this insurance

applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto.' " *Schnackenberg*, 88 Ill. 2d at 3-4. Our supreme court concluded that bicycle riding 2 ½ blocks away from the insured premises was not a use incidental to those premises. *Schnackenberg*, 88 Ill. 2d at 8. The court continued:

> "In short, we believe the coverage clause and the endorsement must be given their plain and unambiguous meaning. If defendants' interpretation of the coverage clause were adopted, the 'insured premises' definition would be rendered meaningless for there would be no geographical limit to coverage and liability for conduct which originated on the premises and could be said to be incidental thereto. *** [W]e should not impose such open-ended coverage when the geographic limits of the policy are clear." *Schnackenberg*, 88 Ill. 2d at 8.

In support of its argument, Recurrent Training Center cites *Dash Messenger Service, Inc. v. Hartford Insurance Co.*, 221 Ill. App. 3d 1007 (1991). In *Dash*, an employee of a bicycle messenger service struck a pedestrian and injured him. The pedestrian alleged that the messenger service negligently failed to adequately screen, train, and supervise its employees. The defendant insurance company denied the messenger service's claim under the "Premises & Related Operations in Progress" portion of its policy on the ground that the accident did not occur on the premises. This court held that an off-premises bicycle accident is a normal and customary risk likely to be inherent in a messenger business. *Dash*, 221 Ill. App. 3d at 1014. Here, however, the airplane crashed after Recurrent Training Center trained Turek; it did not

involve an ongoing business operation as did *Dash*. We further agree with plaintiff that Turek's plane crash was not an "inherent risk" of Recurrent Training Center's flight simulator business, since plaintiff did not insure Recurrent Training Center's business operations, nor did it cover educational malpractice. Indeed, the policy excluded the use of airplanes. We conclude that the policy's use of the phrase "arising out of" was not ambiguous.

Because the injuries to the underlying plaintiffs' decedents occurred off Recurrent Training Center's premises, we affirm the trial court's ruling that plaintiff had no duty to defend it in the underlying actions.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment.

Affirmed.