2026 IL App (1st) 251509-U

SECOND DIVISION
May 12, 2026

No. 1-25-1509

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARLEXI DESIGN, LLC and ASHLEY JONES, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 23 CH 2629 |
| LEXINGTON INSURANCE COMPANY, | ) ) | Honorable Neil Cohen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held***:**  We affirm the circuit court's summary judgment rulings in favor of the insurer where the insurance policy at issue did not even potentially provide coverage for the underlying lawsuit.

¶ 2    Plaintiffs Marlexi Design, LLC and Ashley Jones (collectively "Marlexi") maintained a

commercial insurance policy with defendant Lexington Insurance Company (Lexington). An

individual, Terry Stallings, fell and sustained injuries at a house that Marlexi was renovating. He later sued Marlexi. Marlexi requested Lexington's defense, but Lexington denied it had a duty to defend Marlexi. Marlexi filed a declaratory action, seeking the court to declare that Lexington owed Marlexi a duty to defend. Marlexi and Lexington cross-moved for summary judgment, and the circuit court found in favor of Lexington and against Marlexi, concluding that the policy did not even potentially cover the underlying injury lawsuit. Marlexi appeals. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Marlexi Design, LLC is a Texas limited liability company organized in June 2017 for the purpose of rehabilitating and selling residential properties. In September 2017, Marlexi Design purchased a single-family bungalow (the "Property") with the intent to renovate and sell it. The renovation was Marlexi Design's first and only project in 2017. Ashley Jones was a member of Marlexi Design at all relevant times. Herein, we use "Marlexi" to refer collectively to Marlexi Design, LLC and Jones.

¶ 5    In connection with the renovation, Marlexi obtained a commercial general liability insurance policy (the "Policy") from Lexington, effective September 1, 2017, through September 1, 2018. The Policy included a "Construction Operations Exclusion," which provided, in relevant part:

"This insurance does not apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury,' and medical expenses arising out of any construction, 'construction services,' demolition, renovation, or site preparations."

The Policy also contained a "Limitation of Coverage to Designated Premises or Project" endorsement (the "Designated Premises Endorsement"), which provided that the insurance applied

only to bodily injury arising out of: (1) the ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or (2) the project shown in the Schedule. Neither the Schedule nor the Declarations identified a project.

¶ 6 During the renovation, Marlexi's contractors removed the existing staircase at the Property and erected a temporary staircase to provide access between floors. On December 19, 2017, Stallings, an HVAC contractor, visited the Property at Marlexi's request to assess the HVAC needs and provide an estimate. While conducting the HVAC assessment, the staircase collapsed under Stallings, causing him to fall and sustain injuries.

¶ 7 Stallings sued Marlexi in December 2019. Marlexi tendered its defense to Lexington, which denied a duty to defend based on the Construction Operations Exclusion. Marlexi disputed the disclaimer over the next four years, but Lexington maintained its position and never filed a declaratory judgment action. On March 13, 2023, Marlexi filed this declaratory judgment action, seeking a declaration of Lexington's duty to defend and alleging bad faith. The parties eventually filed cross-motions for summary judgment.

¶ 8 Marlexi argued that the Policy was ambiguous and that Lexington had a duty to defend in the underlying suit. Marlexi argued that the Designated Premises or Project Endorsement provided affirmative coverage for bodily injury arising out of the renovation "project" at the Property, and that this coverage grant conflicted with the Construction Operations Exclusion, which excluded the very same risk. Because the conflict created an ambiguity, the ambiguity had to be resolved in favor of coverage. Marlexi further argued that if the Construction Operations Exclusion were given full effect, it would swallow the core purpose of the Policy, which was to protect a renovation company against liability arising from its renovation work. This, Marlexi argued, would make the Policy illusory and thus contrary to public policy. Finally, Marlexi sought a finding of bad faith

and an award of attorney fees, arguing that Lexington's four-year refusal to defend, without ever seeking a judicial declaration of its rights, was vexatious and unreasonable as a matter of law. See 215 ILCS 5/155 (West 2024).

¶ 9    Lexington argued that the underlying pleadings left no doubt that Stallings' injuries arose directly from Marlexi's renovation of the Property and that such injuries fell squarely within the exclusion. Lexington further contended that there was no conflict between the Designated Premises Endorsement and the Construction Operations Exclusion because both provisions narrowed the scope of coverage, and that the cases Marlexi cited in support of its ambiguity argument involved factually distinct scenarios where at least one endorsement affirmatively broadened coverage. As to the "project" prong of the Designated Premises Endorsement, Lexington argued that no project had ever been identified in the Schedule or the Declarations, leaving the provision without operative content. Lexington also maintained that Marlexi had a duty to read the Policy it purchased, and that Marlexi was bound by its terms. Because no duty to defend existed, Lexington argued, the bad faith claim necessarily failed as well.

¶ 10    On July 8, 2025, the circuit court issued an order granting Lexington's motion and denying Marlexi's motion. The court found that the allegations in the underlying Stallings complaint "unequivocally" established that Stallings' injuries were caused by the collapse of a temporary staircase constructed by Marlexi during the renovation of the Property, and that Stallings would not have been injured but for Marlexi's ongoing construction and renovation activity. On that basis, the court held that the Construction Operations Exclusion "plainly and unambiguously" barred coverage and that Lexington had no duty to defend. As to Marlexi's ambiguity argument, the court acknowledged that the Designated Premises Endorsement limited coverage to bodily injury arising from the ownership, maintenance, or use of the insured premises, while the

4

Construction Operations Exclusion separately barred coverage for injuries arising from construction operations on those same premises, and concluded that the two provisions were complementary limitations rather than conflicting grants, finding no irreconcilable tension between them. On the illusory coverage argument, the court rejected Marlexi's position, finding that the Construction Operations Exclusion did not eliminate all coverage under the Policy because bodily injuries sustained in areas of the Property not undergoing active renovation, including the exterior of the Property, would remain covered. Finally, because it found no duty to defend, the court held that a *bona fide* coverage dispute existed and thus Marlexi could not prevail on its section 155 bad faith claim as a matter of law.

¶ 11    Marlexi appeals.

¶ 12                                          II. ANALYSIS

¶ 13    On appeal, Marlexi argues that Lexington had a duty to defend and that the Policy was illusory.

¶ 14    An insurance policy is a contract, and the rules applicable to contract interpretation govern the interpretation of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Our primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language, and if the language is unambiguous, we apply a provision as written unless it contravenes public policy. *Id.* When construing the language of an insurance policy, we must assume that every provision was intended to serve a purpose and must consider the policy as a whole, rather than as isolated parts. *Id.*

¶ 15    We review *de novo* the circuit court's construction of an insurance policy's terms. See *West Bend Mutual Insurance Co. v Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30.

¶ 16    To determine whether a duty to defend exists, a court compares the allegations of the underlying complaint to the relevant provisions of the insurance policy. *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer must defend, even if the allegations are groundless or fraudulent. *Id*. However, where the face of the complaint makes plain that the allegations fall outside coverage, the insurer has no duty to defend. *Erie Insurance Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 17.

¶ 17                                A. Duty to Defend

¶ 18    The allegations in the underlying complaint fall under the Construction Operations Exclusion. In the underlying complaint, Stallings alleged that Marlexi gutted the home as part of a renovation, removed the original staircase, erected a temporary replacement staircase, and invited him to the worksite to assess HVAC needs. The temporary construction staircase then allegedly injured him when it collapsed. The circuit court found that "Stallings would not have been injured but for Plaintiffs' construction/renovation of the Property."

¶ 19    Marlexi itself conceded in its summary judgment briefing below that "the Underlying Action alleges that Mr. Stallings suffered bodily injury due to the renovations conducted at the Property." It further acknowledged that the Construction Operations Exclusion "explicitly applies to bodily injury arising out of construction and/or renovation." Having made these concessions, Marlexi cannot now seriously dispute that the exclusion applies on its face.

¶ 20    Moreover, the insurance proposal through which Marlexi obtained the Policy expressly stated that "all construction operations are excluded" and that contractors were "not eligible for this General Liability coverage." The exclusion was not hidden; it appeared in plain terms even

before the Policy issued. Under Illinois law, Marlexi had a duty to read its policy and note any discrepancies. See *First Mercury Insurance Co. v. Ciolino*, 2018 IL App (1st) 171532, ¶ 41.

¶ 21    Marlexi next argues that the Designated Premises Endorsement created coverage for the renovation "project," which then conflicted with the Construction Operations Exclusion, rendering the policy ambiguous. We disagree.

¶ 22    In Illinois, an ambiguity arises when two policy provisions conflict such that giving effect to one nullifies the other. *Pekin Insurance Co. v. Equilon Enterprises LLC*, 2012 IL App (1st) 111529, ¶ 20. Such conflicts most often arise where an endorsement alters the scope of coverage provided in the underlying policy, as endorsements are construed as part of the policy and control over inconsistent provisions. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005); *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 742 (2008). Where, as here, both provisions operate to limit rather than expand coverage, no such conflict exists. *Pekin Insurance Co. v. Recurrent Training Center, Inc.*, 409 Ill. App. 3d 114, 120 (1st Dist. 2011).

¶ 23    The Designated Premises Endorsement is a limitation, not an expansion, of coverage. Its full title, "Limitation of Coverage to Designated Premises or Project," makes this plain. It narrows the geographic scope of the main insuring agreement from the entire coverage territory (essentially, the United States and Canada) down to the property in question. The Construction Operations Exclusion separately narrows the type of injury covered by excluding construction-related losses. These two provisions operate in tandem without conflict; enforcing either does not automatically nullify the other.

¶ 24    Finally, Marlexi argues that the circuit court erred by failing to separately analyze the "project" prong of the Designated Premises Endorsement and that coverage independently exists for the renovation "project." This argument fails for two independent reasons.

¶ 25    First, neither the Endorsement's Schedule nor the Declarations identified any project. The Endorsement instructs that, if no project is identified in the Schedule, the "information required to complete this endorsement will be shown in the Declarations." The Declarations reference only premises and do not mention any project. The "project" prong of the Endorsement therefore had no operative content; it was a placeholder with nothing filled in.

¶ 26    Second, even accepting *arguendo* Marlexi's characterization of the renovation as the covered "project," the Designated Premises Endorsement, again, as a limiting provision, cannot create coverage for risks that are separately and explicitly excluded. The Construction Operations Exclusion would bar coverage for any renovation-related injury regardless of whether the project prong were satisfied. Marlexi's argument is overbroad, as it would render every construction-related exclusion ineffective whenever an insured's project happened to be a renovation.

¶ 27    Marlexi's reliance on *Markel International Insurance Company Ltd. v. Erekson*, 279 P.3d 93 (Idaho 2012), is misplaced. In *Erekson*, the designated premises endorsement explicitly listed both a covered premises and a covered project by name. *Id.* at 96-97. There, the distinction mattered because the covered "project" was the insured's sporting goods business, which extended coverage to injuries at an off-site shooting range. *Id.* at 97-98. Here, by contrast, the Policy identified no project whatsoever. *Erekson* does not save Marlexi's argument. Indeed, the *Erekson* court noted that the Designated Premises endorsement functioned as a policy exclusion, and that even where the endorsement was satisfied, a separate products exclusion still barred coverage, lending further support to the circuit court's analysis here. *See id.* at 98-99.

¶ 28                                            B. Illusory Coverage

¶ 29     Marlexi contends that the Construction Operations Exclusion renders the Policy illusory because it excluded the very risk Marlexi sought to insure. Illinois takes a narrow approach to the doctrine of illusory coverage. A policy is not illusory unless an exclusion, read together with the policy as a whole, eliminates coverage in all circumstances for which a premium was paid. *National Fire Insurance of Hartford v. Visual Pak Co.*, 2023 IL App (1st) 221160, ¶¶ 84, 117. Accordingly, even a broad exclusion does not render coverage illusory so long as some circumstances remain in which coverage may apply. *Id*. ¶ 117.

¶ 30     The circuit court found that the Construction Operations Exclusion left meaningful coverage intact: bodily injuries sustained in areas of the Property not subject to active renovation, such as the exterior grounds, were not excluded. We note that Marlexi does not challenge this finding. Because some coverage survives, the Policy is not illusory as a matter of law. See *id*.

¶ 31     The authorities Marlexi cites do not compel a different conclusion. Marlexi relies on the dissent in *National Union Fire Insurance Co. v. Glenview Park District*, 158 Ill. 2d 116 (1994); however, the majority expressly declined to reach the illusory coverage issue. *Id.* at 121-23. Likewise, *Panfil v. Nautilus Insurance Co.*, 799 F.3d 716, 719–20 (7th Cir. 2015), and *Pekin Insurance Co. v. Miller*, 367 Ill. App. 3d 263, 269–70 (2006), addressed ambiguities in exclusionary language, not claims that a policy is rendered illusory. None of these authorities supports Marlexi's contention that the Policy here is illusory.

¶ 32     Illinois law permits insurers to exclude risks inherent in the insured's business, so long as the exclusion is clear and unambiguous. *Dash Messenger Service, Inc. v. Hartford Insurance Company of Illinois*, 221 Ill. App. 3d 1007, 1014 (1991). The Construction Operations Exclusion satisfies that standard. Marlexi also obtained a separate Builder's Risk policy in the same

transaction, which was intended to address construction-phase risks. The existence of that parallel coverage further undermines any assertion that Marlexi lacked meaningful protection for such risks.

¶ 33                                C. Bad Faith

¶ 34    Finally, Marlexi seeks sanctions under section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2024). Section 155 permits recovery only where an insurer's denial of coverage or defense was vexatious and unreasonable. *Id.* Where a *bona fide* dispute exists regarding coverage, section 155 relief is not available. See *State Farm Mutual Automobile Insurance Co. v. Smith*, 197 Ill. 2d 369, 372-73 (2001). Because Lexington had no duty to defend, a *bona fide* dispute as to coverage existed as a matter of law, and Marlexi's section 155 claim fails.

¶ 35    We understand Marlexi's position regarding the delay in obtaining resolution of the coverage dispute. Illinois law requires an insurer that disputes a duty to defend to either defend under a reservation of rights or promptly seek a declaratory judgment regarding its obligations. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 160–61 (1999). However, section 155 does not impose penalties absent a breach of an underlying contractual duty or evidence of vexatious and unreasonable conduct. Because no duty to defend existed here, Marlexi cannot establish a basis for relief under section 155.

¶ 36                              III. CONCLUSION

¶ 37    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.