2025 IL App (1st) 230863-U
No. 1-23-0863

FIRST DIVISION
January 13, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| CC-DEVELOPMENT GROUP, INC.; CC-DENVER, INC.; CC-HILTON HEAD, INC.; CC-NAPLES, INC.; CC-AVENTURA, INC.; CC-LAKE, INC.; CC/PDR SCOTTSDALE, L.L.C.; CC/PDR SILVERSONE, L.L.C.; CC-PALO ALTO, INC.; CCW LA JOLLA, L.L.C.; CC-LA JOLLA, INC.; MERIDIAN PARK VILLAGE LIMITED PARTNERSHIP; CLASSIC RESIDENCE MANAGEMENT LIMITED PARTNERSHIP; and CLASSIC BENTLEY VILLAGE, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, |
| | ) | No. 2022 CH 2164 |
| | ) ) | |
| | ) ) | The Honorable |
| Plaintiffs-Appellants, | ) ) | Celia Gamrath, Judge Presiding. |
| | ) ) ) ) | |
| v. | ) ) | |
| EVANSTON INSURANCE COMPANY and LANDMARK AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Defendants-Appellees, | ) ) ) | |
| (AXIS SURPLUS INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S AND COMPANIES SUBSCRIBING TO POLICY NUMBERS PD-10584-05, B080120001U19, B080112090U19, B080115732U19; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON | ) ) ) ) ) ) | |

SYNDICATE 2987 (BRIT); EVEREST INDEMNITY INSURANCE COMPANY; HALLMARK SPECIALTY INSURANCE COMPANY; HOMELAND INSURANCE COMPANY OF NEW YORK; IRONSHORE SPECIALTY INSURANCE COMPANY; MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA; WESTPORT INSURANCE CORPORATION; LLOYD'S UNDERWRITER SYNDICATE NO. 2001 AML; XL CATLIN INSURANCE COMPANY UK LIMITED; UNICORN WORLDWIDE PROPERTY LIMITED 9417-ARG2121; LLOYD'S UNDERWRITER SYNDICATE NO. 1200 AMA; LLOYD'S UNDERWRITER SYNDICATE NO. 2988 BRIT; LLOYD'S UNDERWRITER SYNDICATE NO. 318 CIN; CONVEX INSURANCE UK LIMITED; LLOYD'S UNDERWRITER SYNDICATE NO. 2015 CHN; HOUSTON CASUALTY COMPANY (UK BRANCH); CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON RENAISSANCE RE SYNDICATE 1458; CANOPIUS RE SYNDICATE 4444; ENDURANCE WORLDWIDE INSURANCE LTD.; AMTRUST SYNDICATE 1861; HDI GLOBAL SPECIALTY SE; WESTERN WORLD INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; LEXINGTON INSURANCE COMPANY; STARR SURPLUS LINE INSURANCE COMPANY; INDEPENDENT SPECIALTY INSURANCE COMPANY; CERTAIN UNDERWRITERS AT LLOYD'S (CONSORTIUM #9226); VELOCITY PROPERTY CONSORTIUM 9226, SUBSCRIBING TO POLICY NUMBER VIS-CN-000681-03; LLOYD'S UNDERWRITERS SYNDICATE 2357; LLOYD'S UNDERWRITER SYNDICATE 1458; and INTERSTATE FIRE & CASUALTY COMPANY,

Defendants.)

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court properly dismissed plaintiffs' claims for "Crisis Management" insurance coverage against both Evanston and Landmark because plaintiffs' claimed losses were excluded by separate endorsements in Evanston and Landmark's policies. The circuit court also properly dismissed plaintiffs' claim for "Contaminated Food/Communicable Disease" coverage against Evanston. However, we reverse the dismissal of plaintiffs' claim for "Contaminated Food/Communicable Disease Coverage" against Landmark. We thus affirm in part but reverse in part.

¶ 2    In this insurance coverage dispute arising from alleged losses due to the COVID-19 pandemic, plaintiffs-appellants appeal from the circuit court order granting motions to dismiss by defendants-appellees Evanston Insurance Company (Evanston) and Landmark American Insurance Company (Landmark). The circuit court concluded that separate exclusions contained in endorsements in the policies issued by Landmark and Evanston precluded plaintiffs' claims for two types of coverage: "Crisis Management" coverage and "Contaminated Food/Communicable Disease" coverage.

¶ 3    For the following reasons, we affirm in part but reverse in part. As to Evanston, we conclude that: (1) the circuit court properly dismissed plaintiffs' claims for "Crisis Management" coverage as barred by Evanston's "Organic Pathogens" exclusion." We also affirm plaintiffs' claim against Evanston for "Contaminated Food/Communicable Disease Coverage" as barred by the same exclusion. Thus, we affirm the dismissal of claims against Evanston.

¶ 4    As to Landmark, we affirm dismissal of plaintiffs' claims for "Crisis Management" coverage, as barred by Landmark's "Exclusion of Pathogenic or Poisonous or Chemical Materials. However, we reverse the dismissal of plaintiffs' claim against Landmark for "Contaminated Food/Communicable Disease Coverage", because we agree with plaintiffs that application of

Landmark's "Exclusion of Pathogenic or Poisonous or Chemical Materials" would completely eviscerate that coverage and render it illusory. Thus, plaintiffs may proceed with their claim for that specific coverage against Landmark. We otherwise affirm the circuit court's order.

¶ 5                                    BACKGROUND

¶ 6    This dispute arose after numerous insurers, including Evanston and Landmark, denied plaintiffs' claims for coverage for alleged losses related to the COVID-19 pandemic.

¶ 7    Plaintiffs operate a number of continuing care retirement communities, under the brand "Vi" or "Vi Senior Living." Plaintiffs' facilities offer a variety of living arrangements for senior citizens, including independent living, assisted living, skilled nursing care, Alzheimer's care, and memory care. Plaintiffs' facilities are in six states and have more than 4,000 residents. In 2020, the facilities were allegedly "inundated with COVID-19 causing significant physical damage, suspension of operations, clean-up costs and efforts to prevent the further spread" of the disease.

¶ 8    At the relevant time, plaintiffs had policies from several insurers, both primary insurers and excess insurers. Although plaintiffs named numerous insurers as defendants, this specific appeal pertains only to two defendants: Evanston, an excess insurer, and Landmark, a primary insurers. It is undisputed that the defendant insurers, including Evanston and Landmark, issued policies to plaintiffs that were in effect from December 31, 2019 to December 31, 2020.

¶ 9                            Relevant Coverage Provisions

¶ 10   As alleged by plaintiffs, all of the defendant insurers' relevant policies adopted the same master policy form and contained the same general terms. The policies (including those issued by Evanston and Landmark) contained a number of identical coverage provisions. Plaintiffs allegedly suffered losses implicating four of those coverages: (1) "Contaminated Food/Communicable Disease Coverage"; (2) "Crisis Management" coverage; (3) "Interruption by Communicable

Disease" coverage; and (4) "Preservation of Property Coverage." The instant appeal concerns dismissal of plaintiffs' claims against Evanston and Landmark for two of those coverages, the "Contaminated Food/Communicable Disease Coverage" and "Crisis Management" coverage.

¶ 11 As to the first of these coverages, each defendant's policy stated, under the heading "CONTAMINATED FOOD/COMMUNICABLE DISEASE COVERAGE", that: "This policy will pay for" "direct physical loss or damage to insured property caused by or resulting from a contaminated food or communicable disease event at an insured location."

¶ 12 Each defendant's policy also set forth "Crisis Management" coverage in a provision entitled "CRISIS MANAGEMENT COVERAGE EXTENSION", which stated "This policy is extended to cover additional cost for communication response and actual loss of Gross Earnings and Extra Expense due to a covered crisis event." The provision then set forth a number of types of "Covered crisis event[s]."

¶ 13 Although not directly at issue in the appealed-from order, the plaintiffs also sued the defendant insurers under two separate coverage provisions. The "Interruption by Communicable Disease" provision set forth coverage for losses resulting from suspension of business activities caused by an order of a governmental agency. The defendants' policies also provided "PRESERVATION OF PROPERTY" coverage for expenses incurred "for the temporary protection and preservation of property" when there was "actual or imminent direct physical loss, damage or destruction by a peril insured by this policy."

¶ 14 The relevant coverage provisions were identical in the defendant insurers' policies. However, Evanston and Landmark included endorsements with exclusions that purported to limit the scope of coverage. The trial court relied on those exclusions in the appealed-from order.

¶ 15 The Evanston Policy and Its "Organic Pathogens" Exclusion

¶ 16     Evanston's policy included language indicating that it was one of a number of excess insurers providing coverage to plaintiffs and limiting its liability to its "pro-rata" share of coverage among plaintiffs' other insurers. The policy specified that Evanston provided coverage at a percentage of two excess layers: "$5,000,000 (9.090901%) part of $55,000,000 excess of $25,000,000 PLUS $15,000,000 (8.82353%) part of $170,000,000 excess of $80,000,000." In other words, Evanston provided $5 million of $55 million in coverage in excess of $25 million. In addition, Evanston provided $15 million in coverage for losses in excess of 80 million.

¶ 17     The Evanston policy included a number of endorsements, each of which was prefaced by the language "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Central to this appeal, Evanston's policy included an endorsement entitled "EXCLUSION – ORGANIC PATHOGENS," (hereinafter the "Organic Pathogens" exclusion") which stated: "This endorsement modifies insurance provide under all Property coverage forms attached to this policy."

¶ 18     Evanston's Organic Pathogens exclusion provided:

> "The following exclusion is added and is therefore not a Covered
>
> Cause Of Loss:
>
> We will not pay for loss or damage caused directly or indirectly by
>
> any of the following. Such loss or damage is excluded regardless
>
> o[f] any other cause or event that contributes concurrently or in
>
> any sequence to the loss.
>
> **Organic Pathogens**
>
> Presence, growth, proliferation, spread or any activity of 'organic
>
> pathogens'."

¶ 19     The endorsement defined "Organic pathogen" to mean:

"a. Any organic irritant or contaminant including, but not limited to,

'fungus,' wet or dry rot, bacteria, virus or other microorganisms of

any type, and their by-products ***; or

b. Any disease-causing agent as classified by the Environmental

Protection Agency."

¶ 20            Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical

Materials"

¶ 21     The Landmark policy also contained a number of endorsements that contained the heading:

"*This Endorsement Changes the Policy. Please Read It Carefully.*" Among these, Landmark's

policy included an endorsement entitled "**EXCLUSION OF PATHOGENIC OR POISONOUS**

**BIOLOGICAL OR CHEMICAL MATERIALS**" that stated that it modified "**ALL**

**COVERAGE PARTS**." That endorsement stated, in relevant part:

"The following exclusion is added:

We will not pay for loss or damage caused directly or indirectly by
the discharge, dispersal, seepage, migration, release, escape or
application of any pathogenic or poisonous biological or chemical
materials. Such loss or damage is excluded regardless of any other
cause or event that contributes concurrently or in any sequence to
the loss."

We refer to this as the "Landmark exclusion" or the "Pathogenic or Poisonous Biological or

Chemical Materials" exclusion.

¶ 22                     Commencement of Litigation

¶ 23     In March 2022, plaintiffs filed a "Complaint for Declaratory Judgment, Breach of Contract

and Damages" against numerous insurers including Evanston and Landmark. Plaintiffs alleged

that the insurers wrongfully denied coverage on plaintiffs' claims for losses arising from Covid-19, "including outbreaks of COVID-19 among residents and staff at Vi Senior Living's continuing care retirement communities."

¶ 24 Plaintiffs alleged that in April 2020, "operations were impaired and/or suspended" at their senior living facilities due to Covid-19, and that they incurred "clean-up costs and effort to prevent the further spread" of the disease. Plaintiffs alleged that they notified the defendant insurers but they "simply turned their backs and denied the claims without any material investigations."

¶ 25 In the complaint, plaintiffs alleged that they had incurred "in excess of $19.7 million in covered losses." They pleaded that their losses implicated the four previously referenced coverages: (1) "Contaminated Food/Communicable Disease Coverage"; (2) "Interruption by Communicable Disease" coverage; (3) "Crisis Management" coverage; and (4) "Preservation of Property Coverage."

¶ 26 Plaintiffs' complaint included six counts for declaratory judgment and breach of contract. Count I sought a general declaration that they were "entitled to coverage for each occurrence of COVID-19 for which it individually suffered loss within the meaning of the Policies." The ensuing four counts sought a specific declaration as to Plaintiffs' right to coverage each of the four referenced coverages. That is, count II pertained to Crisis Management coverage; count III pertained to Interruption by Communicable Disease coverage; count IV pertained to Communicable Disease coverage; and count V pertained to Preservation of Property coverage. The sixth and final count pleaded breach of contract for the defendants' denial of plaintiffs' claims, which allegedly breached the relevant policies.

¶ 27 Insurers' Partial Motion to Dismiss

¶ 28    On August 23, 2022, certain of the insurer defendants filed a partial motion to dismiss, in which they sought dismissal of all counts, except the "Contaminated Food/CommunicableDisease" count IV.[1] That is, the partial motion to dismiss urged that plaintiffs did not allege facts that implicated  (1) "Preservation of Property" coverage; (2) "Crisis Management" coverage, or (3) "Interruption by Communicable Disease" coverage.

¶ 29    Although Evanston and Landmark joined in the partial motion to dismiss, they also filed separate motions to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615), relying on the language specific to their policies.

¶ 30                           Evanston's Motion to Dismiss

¶ 31    Evanston's motion asserted two additional independent grounds upon which it was entitled to dismissal. First, it argued that the "Organic Pathogens" exclusion precluded coverage, as it stated that Evanston would not pay for loss or damage caused by "organic pathogens" which were defined to include "any virus." Evanston argued that this precluded coverage for any of the plaintiffs' alleged losses resulting from Covid-19.

¶ 32    As a second basis for dismissal, Evanston independently urged that plaintiffs' "alleged losses cannot reach Evanston's attachment point" of $25 million. Evanston stated that under its policy, it "cannot have any liability unless Plaintiffs have suffered a per-occurrence loss in excess of $25 million" but plaintiffs' complaint alleged only $19.7 million in covered losses. Evanston claimed that plaintiffs' claims "c[ould] never reach Evanston's per-occurrence attachment point of $25 million."

¶ 33                           Landmark's Motion to Dismiss

---

[1] The moving insurers included Evanston and Landmark as well as a number of other defendants .

¶ 34    In a separate filing, Landmark sought dismissal of all claims against it based on its endorsement containing the "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials." Landmark maintained that Covid-19 is a "pathogenic and biological substance" and thus its "biological or chemical materials exclusion applies to bar coverage for Plaintiffs' claims."

¶ 35                    Plaintiffs' Opposition to the Motions

¶ 36    Plaintiffs filed an "Omnibus Opposition to Defendants' Motions to Dismiss", which addressed the various motions filed by defendants. In response to Evanston and Landmark's motions, plaintiffs argued that the referenced endorsements could not be interpreted to bar coverage in this case, as to do so "would render the Communicable Disease Coverages entirely illusory" and meaningless. Plaintiffs noted the proposition that exclusions that "render coverage entirely illusory violate public policy." Plaintiffs posited that if Evanston's and Landmark's exclusions "apply to all loss and harm caused by viruses *** the Communicable Disease Coverages would be entirely meaningless." Plaintiffs acknowledged that "COVID-19 is caused by a virus (which is a pathogenic material)." Nevertheless, plaintiffs argued that the exclusions could not be construed as broadly as urged by Evanston and Landmark, as this interpretation would "nullify the Communicable Disease Coverages entirely."

¶ 37    Citing non-Illinois case law, plaintiffs urged that where there is a conflict between a coverage provision for communicable disease "and a purported virus exclusion," courts should find the policy is "ambiguous, and that the virus exclusion must be narrowly construed in order to avoid nullifying the communicable disease coverages."  Plaintiffs also argued that the Landmark and Evanston's exclusions did not "clearly and unambiguously *** delete the Communicable Disease Coverages." Plaintiffs suggested that Evanston and Landmark should have used "clear and unmistakable language" that if they "wanted to eliminate coverage for communicable disease."

¶ 38    Regarding Evanston's independent claim that plaintiffs could not reach the $25 million attachment point, plaintiffs noted that their complaint alleged that they had incurred "more than $19,700,000 in covered losses." Plaintiffs also stated that they had since determined that their losses had, in fact, exceeded $25 million.

¶ 39    <u>The Order on the Partial Motion to Dismiss Finds Plaintiffs Did Not Allege "Interruption by Communicable Disease" or "Preservation of Property" Coverage</u>

¶ 40    On April 10, 2023, the circuit court entered two companion orders, which (1) granted the moving insurers' partial motion to dismiss in part as to two of the coverages and (2) granted Evanston and Landmark's motions to dismiss on the remaining coverages. Only the second order is challenged in this appeal, but a review of the first order aids in defining the limited issues on this appeal.

¶ 41    In the first order, the circuit court granted the partial motion to dismiss with respect to two of the four asserted coverages. Specifically, the court dismissed plaintiffs' claim for "Interruption by Communicable Disease" coverage (count III), because plaintiffs failed to plead that any governmental order declared their facilities uninhabitable. The court also dismissed the claim for Preservation of Property coverage (count V), because that coverage required some "direct physical loss, damage or destruction" but "COVID-19 does not cause or result in direct physical loss or damage to property. [Citations.]" However, the court declined to dismiss plaintiffs' count pertaining to "Crisis Management" coverage (count II).[2] Thus, after the court's ruling on the partial motion to dismiss, plaintiffs' remaining claims pertained to only two of the coverages: "Contaminated Food/Communicable Disease" and "Crisis Management." Notably, the propriety

---

[2] In the same order, the circuit court dismissed count I as duplicative of the other declaratory judgment counts. It further determined that the breach of contract count (count V) remained intact "only as to the Contaminated Food/Communicable Disease and Crisis Management Coverages, Counts IV and II."

of the dismissal of the claims for Interruption by Communicable Disease and Preservation of Property coverage are not at issue in this appeal. Rather, the appealed-from order is the separate order dismissing the remaining claims against Evanston and Landmark.

¶ 42      The Circuit Court Grants Evanston and Landmark's Motions to Dismiss

¶ 43     On the same date that it ruled on the partial motion to dismiss, the court entered a separate order (the subject of this appeal) in which it granted both Evanston and Landmark's motions to dismiss the claims against them, with prejudice. In that order, the court determined that Evanston's "Organic Pathogens" exclusion and Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" precluded plaintiffs' claims for coverage.

¶ 44     The court recognized that, in light of its simultaneous order on the partial motion to dismiss, "the only viable coverages that remain are the Contaminated Food/Communicable Disease Coverage and the Crisis Management Coverage." The court then determined that plaintiffs' claim for either of these two coverages was precluded by the exclusions in Evanston and Landmark's endorsements.

¶ 45     The circuit court observed that Evanston's exclusion defined an "organic pathogen" to include a "virus." With respect to Landmark's exclusion, it found "a virus like COVID-19 is a pathogenic biological material and, thus, is covered under this exclusion." The circuit court observed that no Illinois appellate court had yet discussed application of such an exclusion in a Covid-19 case, but that courts in other states had found "similar pathogen exclusions nearly identical to those in Landmark's and Evanston's policies bar coverage of loss or damage caused by Covid-19."

¶ 46     The circuit court also specifically rejected plaintiffs' argument that the exclusions would render "illusory" the applicable coverage provisions. The circuit court reasoned that "To be

illusory, the coverages would have to be 'swallowed up' or functionally nonexistent due to the exclusions."

¶ 47    The circuit court determined that neither the "Contaminated Food/Communicable Disease Coverage" or the "Crisis Management" coverage was rendered illusory by the exclusions. With respect to the "Contaminated Food/Communicable Disease" coverage, the court reasoned: "while a virus is no longer covered due to the exclusions, this coverage still remains applicable to a contaminated food event." The court also found that "Crisis Management" coverage "still maintains a variety of different scenarios in which coverage would apply" notwithstanding the exclusions, such as "violent acts, contaminated food, specified felonies, and other crisis incidents."

¶ 48    The circuit court also rejected plaintiffs' argument that they had a "reasonable expectation that losses from communicable disease would be covered." The court reasoned that the "exclusions in Evanston's and Landmark's policies are big, bold, and conspicuous, putting Plaintiffs on notice that coverage for viruses and pathogens is excluded by the endorsements." The court also noted that "The policies also make clear, as does Illinois law, that the endorsement exclusions function to modify the grant of coverages in the policy." The court found that the "endorsements unambiguously exclude coverage for loss or damage caused directly or indirectly by a virus or pathogen."

¶ 49    For these reasons, the court dismissed plaintiffs' complaint with prejudice as to both Evanston and Landmark. The dismissal order specified that, "Pursuant to Rule 304(a), this is a final, appealable order, and there is no just reason to delay either enforcement or appeal or both."

¶ 50    On May 10, 2023, plaintiffs filed a timely notice of appeal from the order dismissing their claims against Evanston and Landmark.

¶ 51                                    ANALYSIS

¶ 52 On appeal, plaintiffs offer a number of reasons why the circuit court erred in dismissing their claims for "Contaminated Food/Communicable Disease" and "Crisis management" coverage against Evanston and Landmark.[3]

¶ 53 Among these, plaintiffs suggest that dismissal was premature because "issues related to intent and a policyholder's reasonable expectation of coverage" should be decided after discovery, rather than upon a motion to dismiss. Plaintiffs further dispute that the exclusions in either the Evanston or Landmark endorsements barred plaintiffs' claims for "Contaminated Food/Communicable Disease" or "Crisis management" coverage. Under the principle that exclusions are to be read narrowly, they claim that Evanston and Landmark did not show that their exclusions "unambiguously deleted" coverage for losses related to Covid-19. Separately, plaintiffs claim that the exclusions should not be enforced because they impermissibly render one or more of the coverage provisions illusory.

¶ 54 We have considered plaintiffs' contentions with respect to Landmark and Evanston, separately analyzing application of the Evanston and Landmark exclusions to each of the two coverages at issue. As to Evanston, we affirm the circuit court's dismissal. That is, we agree with the circuit court that Evanston's "Organic Pathogens" exclusion precludes plaintiffs' claims for Covid-19 losses under either the "Contaminated Food/Communicable Disease" coverage or "Crisis management" coverage. In doing so, we find that Evanston's exclusion did not render either of those two coverages illusory.

¶ 55 As to Landmark, we affirm dismissal of plaintiffs' claim for "Crisis Management" coverage, as such coverage was barred by Landmark's "Exclusion of Pathogenic or Poisonous

---

[3] Insofar as Plaintiffs' brief refers to its claim for "Interruption by Communicable Disease" coverage, we emphasize that the circuit court's dismissal of that coverage was *not* at issue in the appealed-from order granting Evanston and Landmark's motions to dismiss, but rather was discussed in the companion order deciding certain insurers' partial motion to dismiss. Thus, applicability of that particular coverage is not before us.

Biological or Chemical Materials." Landmark's exclusion did not render "Crisis Management" coverage illusory.

¶ 56    We reach a different conclusion, however, with respect to plaintiffs' claim for "Contaminated Food/Communicable Disease" coverage against Landmark. That is, Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" was so broad that it swallowed up the "Contaminated Food/Communicable Disease" coverage and rendered it illusory. Thus, we do not apply Landmark's exclusion to this particular claim for coverage. For that reason, we reverse dismissal of plaintiffs' claim (count IV) for "Contaminated Food/Communicable Disease" coverage against Landmark, and we remand for proceedings on that specific claim.

¶ 57              Standard of Review and Insurance Contract Interpretation Principles

¶ 58    Here, the court granted Evanston and Landmark's motions under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2022). "A section 2-615 motion to dismiss [citation] challenges the legal sufficiency of a complaint based on defects apparent on its face. [Citation.] Therefore we review *de novo* an order granting or denying a section 2-615 motion." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Moreover, the construction of the terms of an insurance policy presents a question of law, which is also reviewed *de novo*. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 125978, ¶ 30.

¶ 59    Our supreme court has set forth the following principles:

> "The primary function of this court in construing contracts for
> insurance is to ascertain and give effect to the parties' intent as
> expressed in the insurance contract's language.  [Citation.] If the
> terms of the insurance contract are clear and unambiguous, the court
> will give them their plain and ordinary meaning. [Citations.]

> Conversely, if the terms are susceptible to more than one meaning,
> they are considered ambiguous and will be construed strictly against
> the insurer who drafted the contract." *Id*. ¶ 32.

¶ 60    "Insurance policies are to be liberally construed in favor of coverage \*\*\*. [Citation.] Provisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and against the insurer." (Internal quotation marks omitted.) *Pekin Insurance Company v. AAA-1 Masonry & Tuckpointing*, 2017 IL App (1st) 160200, ¶ 23. " 'This rule of construction, however, does not justify construing a contract against an insurer when no real ambiguity exists.' " *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 18 (quoting *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 495 (1985)). We will not find a provision ambiguous merely because the parties disagree as to its meaning. *Id*.

¶ 61    Notably, each of the exclusions at issue in this appeal is contained in an endorsement added by Evanston or Landmark that follows the main body of the policy. A court must "construe the policy in its entirety, giving effect to all parts of the policy as is possible, including endorsements." (Internal quotation marks omitted.) *Pekin Insurance Co. v. Recurrent Training Center, Inc*., 409 Ill. App. 3d 114, 120 (2011). "If, however, the provisions of a policy and an attached endorsement conflict, the terms and conditions of the endorsement control and supersede the conflicting policy provisions." *Id.* at 118; see also *IMC Global v. Continental Ins. Co*., 378 Ill. App. 3d 797, 807 (2007) (only where an endorsement irreconcilably conflicts with a provision in the body of the policy, will the terms of the endorsement control). Our Fifth District has similarly stated: "where the policy and the endorsements conflict, the endorsement prevails, at least where it is clear that the policyholder understood and accepted the language of the endorsement." *Strowmatt v. Sentry*

*Insurance*, 2020 IL App (5th) 190537, ¶ 17 (citing *Rockford Mutual Ins. Co. v. Economy Fire & Casualty Co.*, 217 Ill. App. 3d 181, 186 (1991)).

¶ 62    With these principles in mind, we turn to the substance of plaintiffs' arguments.

¶ 63    <u>Discovery as to "Reasonable Expectations" Was Not Required Absent any Ambiguity</u>

<u>in the Relevant Policy Language</u>

¶ 64    Before we delve into the specific language of either the Evanston or Landmark policy, we briefly address plaintiffs' argument that dismissal was inappropriate at the pleading stage, before the parties conducted discovery regarding the plaintiffs' "reasonable expectations" of coverage under the policies. Plaintiffs rely on the long-settled principle that courts construe policies as a whole, including with respect to the type of risks insured against. See *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993) ("To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract."). Based on this, plaintiffs suggest that the court could not dismiss their coverage claims before discovery as to plaintiffs' reasonable expectations of coverage for losses from diseases such as Covid-19.

¶ 65    The case law simply does not support plaintiffs' position. There is no reason why a circuit court cannot dismiss on the basis of unambiguous policy language, without having to consider extrinsic evidence elicited in discovery. We recognize that in ascertaining the meaning of the words used in the insurance policy, a court considers the policy as a whole, taking into account its subject matter and purpose. *Id.* Yet, this principle of contract interpretation does not mean that

discovery is always required. Rather, "[i]f the words in the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." *Id*.

¶ 66    To the extent plaintiffs invoke the reasonable expectations doctrine, this court has questioned its viability. Under that doctrine, "the objectively reasonable expectations of all applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though  painstaking study of the policy provisions would have negated those expectations." *Continental Casualty Co. v. Howard Hoffman and Associates*, 2011 IL App (1st) 100957, ¶ 76. However, "[a] number of cases have specifically rejected the notion that the reasonable expectations doctrine applies in Illinois. [Citations.]" *Id.*, ¶ 77; see also *Landmark America Ins. Co. v. NIP Group Inc.,* 2011 IL App (1st) 101155, ¶ 26 (remarking that "the status of the reasonable-expectations doctrine in Illinois is, at best, unclear.").

¶ 67    This court's precedent indicates that reasonable expectations can be taken into account only when there is an ambiguity in the policy language, but the courts are otherwise bound to apply the unambiguous language of the policy. See *Continental Casualty Co.*, 2011 IL App (1st) 100957, ¶ 78 (declining to apply reasonable expectations doctrine where "the plain and unambiguous language of the policy provides that the claims at issue are related and are subject to the single, $100,000 policy limit, and we do not believe that the policy language can reasonably be read otherwise."). That is, "The reasonable expectations test is used as a tool of construction in assessing the intent of the parties when a contract is ambiguous. The test is not used when a study of the policy provisions would have negated those expectations." *State Farm Mutual Auto Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 109, n. 7.  This is entirely consistent with the general contract law principle limiting the use of extrinsic evidence: "Where the terms of a contract are clear and unambiguous, the parties' intent must be derived solely from

the document. [Citation.] If the terms of the alleged contract are ambiguous *** parol evidence is admissible to determine the parties' intent." *A. Epstein and Sons International, Inc v. Eppstein Uhen Architects, Inc*., 408 Ill. App. 3d 714, 720 (2011).

¶ 68    In short, we reject plaintiffs' suggestion that its coverage claims could not be dismissed without conducting discovery as to the parties' intent or reasonable expectations. Rather, the trial court was empowered to assess the viability of plaintiffs' claims under the clear and unambiguous language of the policies, without resort to extrinsic evidence. We will thus proceed to the plaintiffs' arguments as to whether the court erred in its interpretation of the policy provisions at issue.

¶ 69    Evanston's "Organic Pathogens" Exclusion Precluded Coverage for COVID-19 Losses

¶ 70    We turn to plaintiffs' argument that the circuit court erred in dismissing their claims against Evanston and Landmark because it applied Evanston's "Organic Pathogens" and Landmark's "Pathogenic or Poisonous Biological  or Chemical Materials" exclusions too broadly. Citing the principle that exclusions should be read narrowly, plaintiffs suggest that the plain language of either exclusion did not bar coverage for losses from COVID-19. Plaintiffs acknowledge that if there is a conflict between an endorsement and a prior policy provision, then the endorsement controls. Yet plaintiffs assert "there was no apparent conflict" between the endorsements and the coverages for "Contaminated Food/Communicable Disease" and "Crisis Management." In so doing, plaintiffs point out that neither endorsement used the phrase "communicable disease", nor did they explicitly state they "were deleting or limiting" the "Contaminated Food/Communicable Disease" or "Crisis Management" coverage provisions.

¶ 71    This argument is flawed as to either Evanston or Landmark. First, as Evanston, we reject plaintiffs' suggestion that there is "no apparent conflict" between Evanston's "Organic Pathogens" exclusion and the two coverage provisions at issue. We acknowledge the general principle that

exclusions should be construed "narrowly" and applied "only where [their] terms are clear, definite, and specific." *Gillen v. State Farm Mut. Automobile Insurance*, 215 Ill. 2d 381, 393 (2005). Nevertheless, even read narrowly, the plain language of Evanston's exclusion clearly limit (at least in part) both coverages at issue: the "Contaminated Food/Communicable Disease" coverage, as well as "Crisis Management" coverage.

¶ 72    As the circuit court recognized, the exclusion in Evanston's endorsement explicitly bars coverage for a loss or damage caused by "Organic Pathogens," including any "virus." That exclusion clearly conflicts with the Contaminated Food/Communicable Disease" provision, which indicated coverage for "direct physical loss or damage to insured property caused by or resulting from a contaminated food *or communicable disease event* at an insured location." (Emphasis added). It is hard to think of any "communicable disease" *not* involving an organic pathogen. And there is no dispute that COVID-19 is caused by a "virus," which is explicitly included in the Evanston policy's definition of an "organic pathogen." Evanston's exclusion plainly limits the scope of the "Contaminated Food/Communicable Disease" coverage and bars such coverage for losses from viruses.

¶ 73    Evanston's "Organic Pathogens" exclusion also clearly conflicts, at least in part, with the "Crisis Management" coverage. That coverage provision included subparts that defined several types of "covered crisis event[s]"; one of these included closures caused by communicable disease, as follows:

> "b. Premises Contamination. Necessary closure of a covered
> premises due to any sudden, accidental and unintentional
> contamination *** which results in clear, identifiable, internal or
> external visible symptoms of bodily injury, illness, or death of any

person(s). *This includes covered premises contaminated by communicable disease \*\*\*.*" (Emphasis added).

¶ 74    Evanston's "Organic Pathogens" exclusion plainly conflicts with the purported coverage for "communicable disease." Thus, we agree with the trial court that Evanston's exclusion precludes plaintiff's claims for "Crisis Management" coverage for losses arising from Covid-19.

¶ 75    <u>Landmark's "Exclusion of Pathogen or Poisonous Biological or Chemical Materials" Also Limits Both Coverages at Issue</u>

¶ 76    Applying the same analysis to Landmark, its "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" also clearly conflicts with both coverage provisions at issue.[4] In its exclusion, Landmark stated it would not pay for "loss or damage caused directly or indirectly \*\*\* any pathogenic or poisonous biological or chemical materials," "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

¶ 77    This exclusion obviously conflicts with the "Contaminated Food/Communicable Disease" provision, insofar as it provided coverage for a "contaminated food or communicable disease event at an insured location." This is because any "communicable disease" necessarily results from some sort of "pathogenic" material, such as a virus. There is no dispute that Covid-19 is a communicable disease resulting from such pathogenic material.

¶ 78    For the same reasons, Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" conflicts with and limits the "Crisis Management" coverage, insofar as that coverage provision refers to premises contamination by "communicable disease." Given

---

[4] It bears repeating that the coverage provisions are identical in the Evanston and Landmark policies, although the exclusions at issue are worded differently.

Landmark's exclusion of coverage for losses from any pathogenic materal, plaintiffs cannot seek "Crisis Management" coverage from Landmark for losses from Covid-19.

¶ 79    We thus reject plaintiffs' suggestion that there is "no apparent conflict" between the exclusions and the coverage provisions at issue. The plain language of both exclusions clearly limit both coverages at issue: the "Contaminated Food/Communicable Disease" coverage, as well as "Crisis Management" coverage. Moreover, plaintiffs' suggestion that the coverage provisions should be construed as "exceptions" to the exclusions in the endorsements is contrary to Illinois case law, which instructs that the endorsements control. *Pekin*, 409 Ill. App. 3d at 118 (If *** the provisions of a policy and an attached endorsement conflict, the term and conditions of the endorsement control and supersede the conflicting policy provisions.")

¶ 80    We thus agree with the circuit court that the plain language of the Evanston and Landmark exclusions barred plaintiffs' claimed Covid-19 losses, under either the "Contaminated Food/Communicable Disease" coverage or the "Crisis Management" coverage provision.

¶ 81    This conclusion does not resolve this appeal, however. Plaintiffs alternatively urge that the Evanston and Landmark exclusions should not be applied because they render one or more of the coverages "illusory." We thus turn to that topic.

¶ 82    The Governing Standard as to Whether an Exclusion Renders Coverage Illusory

¶ 83    Under Illinois law, there is a high threshold before a court will find an exclusion inapplicable on the ground that it renders coverage illusory. An "illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything." *Motherway & Napleton, LLP v. Sentinel Insurance Company Limited*, 631 F. Supp. 3d 496, 501 (N.D. Ill. 2022). However, "coverage is not illusory just because it only covers uncommon occurrences." *Id.*

¶ 84   Accordingly, an insurance policy will not be deemed illusory, so long as it provides coverage against at least some potential liabilities. *Nicor, Inc. v. Associated Elec. and Gas Ins. Services Ltd.*, 362 Ill. App. 3d 745, 754 (2005) ("The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory. [Citation.]"); see also *U.S. Specialty Insurance Co. v. Village of Melrose Park*, 455 F.Supp.3d 681, 689 (N.D. Ill. 2020) ("An insurance policy is illusory under Illinois law if 'there is no possibility under any set of facts for coverage.'" (quoting *Atlantic Specialty Ins. Co. v. AC Chicago*, *LLC*, 272 F. Supp. 3d 1043, 1051 (N.D. Ill. 2017)).

¶ 85   Similarly, an exclusion will not be deemed to render a specific coverage illusory, if it leaves open at least some possibility for application of the coverage. Our court recently stated: "under Illinois law, the fact that an exclusion has a 'broad sweep' is not, in and of itself, a reason to deem the coverage 'illusory.' It is only when the exclusion has the effect of 'swallowing' the coverage *entirely* that the exclusion can be deemed illusory." (Emphasis in original). *National Fire Insurance Company of Hartford and Continental Insurance Co v. Visual Pak Company, Inc.*, 2023 IL App (1st) 221160, ¶ 84.

¶ 86   In the same decision, this court explained that for an exclusion to render a coverage illusory, it is not enough that the exclusion "conflicts" with coverage. *Id*. ¶ 93. This is because "every exclusion, to some degree, conflicts with the coverage provision. That is the very reason for the exclusion; it is an exception to the general rule of coverage." *Id*.  Rather, "[i]f the exclusion wipes out all coverage, it is deemed illusory" *Id*. ¶ 96. "But the mere breadth of an exclusion, alone, does not equate to ambiguity, nor does it render the coverage illusory." *Id*. ¶ 97.

¶ 87   *National Fire Insurance Company* further instructs that "the fact that the exclusion might 'conflict' or 'clash' with other provisions of the coverage *that are not presently at issue in this*

*case* is not a basis to invalidate the exclusion as applied to *this* case; our job is not to seek out other problems and solve them, but rather to adjudicate the controversy presently before us." (Emphases in original) *Id*. ¶ 84.

¶ 88 "Interruption by Communicable Disease" Coverage Is Irrelevant To This Appeal

¶ 89 We briefly address plaintiffs' claim that the Evanston and Landmark exclusions are invalid because they render the "Interruption by Communicable Disease" Coverage illusory— notwithstanding that the circuit court entered a separate order (*not* the subject of this appeal) determining that plaintiffs did not state a claim for that coverage.[5] Yet this court's decision in *National Fire Ins. Company* makes clear that plaintiffs cannot stake an "illusory" argument on a coverage that is not presently at issue. See *id*. The "Interruption by Communicable Disease" coverage is not presently at issue in this appeal, and thus the potential impact of the exclusions on that particular coverage is not relevant to the plaintiffs' claims on the two separate coverages at issue: "Contaminated Food/Communicable Disease Coverage" and "Crisis Management" coverage. The separate order dismissing plaintiffs' claims for "Interruption by Communicable Disease" coverage is not at issue in this appeal. As our role is "to adjudicate the controversy presently before us," *id*., we will not address whether the exclusions render the "Interruption by Communicable Disease" coverage illusory.

¶ 90 We thus proceed to assess whether either of the Evanston and Landmark exclusions render illusory either of the two coverages that are at issue: "Crisis Management" coverage and Contaminated Food/Communicable Disease coverage. We will first assess application of the Evanston "Organic Pathogens" exclusion to the two coverages, before addressing application of the Landmark exclusion to the same two coverages.

---

5       Plaintiffs' briefing states that they have reserved their right to ultimately appeal that conclusion.

¶ 91     Evanston's Exclusion Does Not Render "Crisis Management" Coverage Illusory

¶ 92     We first agree with the circuit court that Evanston's exclusion did not render the "Crisis Management" coverage illusory. Evanston's "Organic Pathogens" exclusion provided:

> "The following exclusion is added and is therefore not a Covered
>
> Cause Of Loss:
>
> We will not pay for loss or damage caused directly or indirectly by
>
> any of the following. Such loss or damage is excluded regardless
>
> o[f] any other cause or event that contributes concurrently or in
>
> any sequence to the loss.
>
> **Organic Pathogens**
>
> Presence, growth, proliferation, spread or any activity of 'organic
>
> pathogens'."

¶ 93     The exclusion defined "Organic pathogen" to mean:

> "a. Any organic irritant or contaminant including, but not limited to,
>
> 'fungus,' wet or dry rot, bacteria, virus or other microorganisms of
>
> any type, and their by-products ***; or
>
> b. Any disease-causing agent as classified by the Environmental
>
> Protection Agency."

¶ 94     We compare this to the "Crisis Management" coverage provision, which stated: "This policy is extended to cover additional cost for communication response and actual loss of Gross Earnings and Extra Expense due to a covered crisis event." Importantly, that provision set forth several categories of a "covered crisis event." Those categories include: (a) certain "Violent acts" resulting in personal injury or death; (b) "Premises contamination"; (c) discovery or suspicion of

"Contaminated Food"; (d) "[S]pecified felonies" committed on insured premises; and "Other Crisis incidents." Such "Other Crisis incidents" were defined to include "explosion," "fire", "construction accident", "[e]quipment failure" or "workplace accident" that "results in regional or national news media coverage."

¶ 95    Keeping in mind that a coverage will be rendered illusory only if it is completely "wipe[d] out" by an exclusion, *National Fire Insurance Co.*, 2023 IL App (1st) 221160,  ¶ 96, it is plain that the Crisis Management coverage is not rendered illusory by Evanston's "Organic Pathogens" exclusion. That is, Evanston's exclusion does not swallow the coverage entirely. See *id*. ¶ 84 ( It is only when an exclusion has "the effect of 'swallowing' the coverage *entirely* that the exclusion can be deemed illusory." (Emphasis in original).

¶ 96    Certainly, the scope of the "Crisis Management" coverage is *limited* by Evanston's "Organic Pathogens" exclusion. For instance, that exclusion clearly conflicts with subsection (b) of the Crisis Management coverage, "Premises contamination," which references "communicable disease." Nevertheless, notwithstanding Evanston's exclusion, the "Crisis Management" coverage plainly could still apply to a number of other events at the insured premises that have nothing to do with organic pathogens, such as violent acts, fires, explosions, or construction accidents. Clearly, such covered events would not implicate Evanston's "Organic Pathogens" exclusion. In other words, the Crisis Management coverage  is not "wiped out" by Evanston's exclusion. Thus, we cannot say that Evanston's exclusion renders the Crisis Management coverage illusory.

¶ 97    "Evanston's "Organic Pathogens" Exclusion Does Not Render "Contaminated
Food/Communicable Disease" Coverage Illusory

¶ 98    We turn to address whether Evanston's exclusion renders the "Contaminated Food/Communicable Disease" coverage illusory. This question is much closer than that with

respect to "Crisis Management" coverage. Nonetheless, we find that there is at least some remaining coverage under the "Contaminated Food/Communicable Disease" provision notwithstanding Evanston's "Organic Pathogens" exclusion, such that this coverage is also not rendered illusory.

¶ 99    We restate the relevant language of the "Contaminated Food/Communicable Disease" coverage provision:

> "This policy will pay for:
>
> a. direct physical loss or damage to insured property caused by or resulting from a contaminated food or communicable disease event at an insured location;
>
> b. equipment cleaning and replacement of consumable goods declared contaminated by a public health authority;
>
> (c) costs to test, monitor, contain, treat, detoxify, disinfect, neutralize, cleanup including debris removal on insured property."

The policy did not define what constitutes a "contaminated food or communicable disease event." Indeed, it did not define either "contaminated food" or "communicable disease."

¶ 100   As previously discussed, we think it is plain that Evanston's exclusion for losses caused by "organic pathogens" excludes coverage for losses from "communicable disease." It is difficult to see how any "communicable disease" would not fall within the scope of the "Organic Pathogens" exclusion. Yet that alone does not render the "Contaminated Food/Communicable Disease" coverage illusory, since it also provides coverage for certain losses or damages caused by a "contaminated food" event. That is, for the entire coverage provision to be rendered illusory, we would have to determine that Evanston's exclusion bars coverage for *any* "contaminated food"

event, *i.e.*, that it *entirely* "swallows" any food contamination coverage. See *National Fire Insurance Co.*, 2023 IL App (1st) 221160, ¶ 84.

¶ 101 We cannot say this is so, and thus we cannot find that the "Contaminated Food/Communicable Disease" coverage is rendered illusory by Evanston's "Organic pathogens" exclusion. This is especially so, because the coverage provision does not limit what may cause a "contaminated food" event. We recognize that food contamination is often caused by bacteria or viruses, which are undeniably organic pathogens. See ask.usda.gov/s/article/What-is-food-contamination ("Pathogenic (disease-causing organism) contamination – such as bacteria ,viruses and parasites – can be on food that if not handled or cooked safely, can cause illness.") That is, coverage for that sort of contamination would be barred by Evanston's "organic pathogens" exclusion. However, the policy does not purport to limit the scope of a covered "contaminated food" event to contamination from organic sources. That is, food contamination could also refer to contamination with inorganic substances, such as chemical compounds, or metals such as lead. See *id.* ("Food can also be contaminated (made impure) by chemicals such as pesticides *** certain cleaning compounds, and sometimes by use of improper containers (pots) used for cooking or storing food.")

¶ 102 The United States Food and (FDA) Drug Administration recognizes numerous food contaminants that are *not* organic; these include metals that may occur naturally such as arsenic, lead, mercury, cadmium, as well as "Human-made chemicals formed from or used in manufacturing industrial and consumer products including: Benzene, Dioxins and PCBs, and Per- and Polyfluoroalkyl Substances (PFAS)." "Chemical Contaminants & Pesticides", available at https://www.fda.gov/food/chemical-contaminants-pesticides; see also "List of Select Chemicals in the Food Supply Under FDA Review", available at https://www.fda.gov/food/food-chemical-

safety/list-select-chemicals-food-supply-under-fda-review. The FDA has also identified a number of potentially toxic chemical "process contaminants" that can form during food processing and cooking. See "Process Contaminants in Food", available at https://www.fda.gov/food/chemical-contaminants-pesticides/process-contaminants-food. In addition, chemicals in food packaging could be a source of non-organic contamination. "A review study [in 2022] came out showing thousands of potentially harmful chemicals detected in food packaging that could leave trace contaminants or residues on the food product." Elisabeth Anderson & Joe Zagorski, "What's The Risk? Food Packaging", Michigan State University, Center for Research on Ingredient Safety, (June 6, 2022) (available at https://www.canr.msu.edu/news/what-s-the-risk-food-packaging). A separate 2024 study found there were "3,600 chemicals found in both food packaging and in humans," of which 80 chemicals were "known to have 'hazard properties' of high concern' to human health." Pien Huang, "Hazardous chemicals in food packaging can also be found in people," National Public Radio (Sep. 21, 2024), available at https://www.npr.org/sections/shots-health-news/2024/09/20/g-s1-23909/food-packaging-chemicals-health-hazard.

¶ 103   Since food contamination may result from causes other than organic pathogens, there is potential "Contaminated Food/Communicable Disease Coverage" coverage under Evanston's policy, notwithstanding its "Organic Pathogens" exclusion. In turn, we cannot say that this exclusion renders the "Contaminated Food/Communicable Disease" coverage" illusory.

¶ 104   Thus, plaintiffs' illusory coverage argument fails with respect to Evanston as to either coverage at issue. Rather, we agree with the circuit court that Evanston's "Organic Pathogens" exclusion was enforceable and precluded plaintiffs' claims for coverage for alleged COVID-19

losses under either the "Crisis Management" or "Contaminated Food/Communicable Disease" coverage provisions.[6] Accordingly, we affirm the dismissal of plaintiffs' claims against Evanston.

¶ 105   Landmark's Exclusion Does Not Render "Crisis Management" Coverage Illusory

¶ 106   We turn to assess whether Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" rendered either of the two relevant coverage provisions illusory. We reach different conclusions with respect to the two coverages at issue.

¶ 107   We review the language of Landmark's exclusion, which stated in part:

> "The following exclusion is added:
>
> We will not pay for loss or damage caused directly or indirectly by the discharge, dispersal, seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

¶ 108   We first find that this exclusion does not render the "Crisis Management" coverage illusory, as it does not completely eliminate that coverage. As discussed, the "Crisis Management" provision set forth several categories of a "covered crisis event." Such covered events included certain violent acts or specified felonies, "premises contamination" due to "communicable disease," and "Other Crisis incidents" including "[e]xplosion," "[f]ire", "[c]onstruction accident," "[e]quipment failure" or "[w]orkplace accident."

¶ 109   Certainly, coverage for *some* of these events is limited by Landmark's exclusion for losses from "pathogenic or poisonous biological or chemical materials." As noted, Landmark's exclusion

---

[6] As we affirm the dismissal of the coverage claims against Evanston based on application of the "Organic Pathogens" exclusion, we need not consider Evanston's alternative argument that dismissal was otherwise warranted because plaintiffs' alleged losses could not reach the $25 million attachment point to trigger coverage under Evanston's policy.

clearly bars a claim for "Crisis Management" coverage due to "communicable disease," since "communicable disease" necessarily involves "pathogenic" biological material such as a virus.

¶ 110   Nevertheless, Landmark's exclusion does not swallow the "Crisis Management" coverage entirely. As the circuit court found, there are undoubtedly "covered crisis event[s]" under that provision that do not involve "pathogenic or poisonous biological or chemical materials." For example, there could be covered acts of violence, fire, or workplace accidents that have nothing to do with any pathogenic or poisonous materials that would implicate the exclusion. As the potential for Crisis Management coverage is not wiped out by Landmark's exclusion, that coverage is not rendered illusory. In turn, we reject plaintiffs' challenges to application of Landmark's exclusion to its claim for Crisis Management coverage (count II). We will thus affirm the circuit court's dismissal of count II against Landmark.

¶ 111   Landmark's Exclusion Renders the "Contaminated Food/Communicable Disease"

Coverage Illusory

¶ 112  We reach a different conclusion when applying Landmark's broad "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" to the "Contaminated Food/Communicable Disease" coverage. We find the exclusion is so broad that it effectively eviscerates and precludes any coverage for "Contaminated Food/Communicable Disease." Thus we agree that this particular provision is rendered illusory by Landmark's exclusion. In turn, Landmark's exclusion is not enforceable as to this specific coverage.

¶ 113   Significantly, in contrast to Evanston's exclusion discussed *supra*, Landmark's exclusion is *not* limited to organic pathogens. Landmark's exclusion is entitled "EXCLUSION OF PATHOGENIC OR POISONOUS OR CHEMICAL MATERIALS." In it, Landmark stated that it would not pay for "loss or damage caused directly or indirectly by the discharge, dispersal,

seepage, migration, release, escape or application of any pathogenic or poisonous biological or chemical materials." This exclusion is clearly broader than Evanston's "Organic Pathogens" exclusion, insofar as Landmark disclaimed coverage for losses from not only "pathogenic" but also "poisonous biological *or chemical* materials."

¶ 114    Given the breadth of Landmark's exclusion, we do not see how any coverage remains intact under the "Contaminated Food/Communicable Disease Coverage" provision. There is no dispute that any losses from communicable disease are excluded as resulting from "pathogenic" materials. Further, (in contrast to our analysis of the Evanston exclusion), we fail to see how any coverage for a "contaminated food" event survives the Landmark exclusion, since Landmark's exclusion encompasses "poisonous biological or chemical materials." It is difficult to imagine how food contamination could *not* involve some pathogenic or poisonous *biological or chemical* materials. In effect, Landmark excluded from coverage *all* potential food contamination, whether organic or chemical in origin. The same exclusion barred coverage for losses from any communicable disease. In turn, we conclude that Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" completely swallows the "Contaminated Food/Communicable Disease" coverage, making it illusory. *National Fire Ins*., 2023 IL App (1st) 21160, ¶ 84 ("It is only when the exclusion has the effect of 'swallowing' the coverage entirely that the exclusion can be deemed illusory.").

¶ 115 As we conclude that Landmark's exclusion renders the "Contaminated Food/Communicable Disease" coverage illusory, we find that the exclusion is unenforceable as a defense to plaintiffs' claim against Landmark for that specific coverage. On this basis, we reverse only the portion of the circuit court's order that granted Landmark's motion to dismiss plaintiffs' claim under the "Contaminated Food/Communicable Disease" coverage provision (count IV).

That is, plaintiffs' claim for that coverage may proceed against Landmark. We thus remand for proceedings on that claim against Landmark. We note that this decision does not bar Landmark from raising any other potential defenses to plaintiffs' claim for this coverage in subsequent proceedings.

¶ 116   In summary, we affirm in part but reverse in part the circuit court's order granting Evanston and Landmark's motions to dismiss. We conclude that: (1) the circuit court properly dismissed plaintiffs' claim for "Crisis Management" coverage (count II) against both Evanston and Landmark, as plaintiffs' claimed COVID-19 losses were excluded under Evanston's "Organic Pathogens" Exclusion as well as Landmark's "Exclusion of Pathogenic or Poisonous or Chemical Materials." The circuit court also correctly dismissed plaintiffs' claim for "Contaminated Food/Communicable Disease Coverage" (count II) against Evanston, as barred by Evanston's "Organic Pathogens" exclusion. However, we conclude that Landmark's "Exclusion of Pathogenic or Poisonous Biological or Chemical Materials" is not enforceable  with respect to plaintiffs' claim for "Contaminated Food/Communicable Disease" coverage, as it would completely wipe out that coverage and render it illusory. Thus, we reverse only the portion of the appealed-from order that dismissed plaintiffs' claim for "Contaminated Food/Communicable Disease" coverage (count II) against Landmark, and we remand for further proceedings on that claim. We otherwise affirm the appealed-from order.

¶ 117   We thus affirm in part, reverse in part, and remand for further proceedings.

¶ 118                              CONCLUSION

¶ 119   For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed in part and reversed in part. We remand for further proceedings consistent with this order.

¶ 120   Affirmed in part and reversed in part.

¶ 121   Cause remanded.